(C. D. 1425)

DAVIES TURNER & COMPANY v. UNITED STATES

United States Customs Court, Second Division

(Decided June 3, 1952)

Wallace & Schwartz (*Joseph Schwartz* and *Barnes, Richardson & Colburn* (*Edward N. Glad*) of counsel) for the plaintiff.

Charles J. Wagner, Acting Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: At the trial, the above two protests were consolidated for hearing and decision.

Importations of so-called Burnoil heaters accompanied by Burnoil draft controls were classified by the collector of customs as "machines, finished or unfinished, not specially provided for" pursuant to the provision in paragraph 372 of the Tariff Act of 1930 (19 U. S. C. §1001, par. 372) and duty was imposed thereon at the rate of 27½ per centum ad valorem.

In the protests as originally filed, plaintiff contends that the items of merchandise above referred to are properly dutiable "at 25% ad valorem under the provisions of Par. 397 of the Tariff Act of 1930." The protests were in due course amended to embody the following claim: "The merchandise is dutiable at 25% under Paragraph 397, Tariff Act of 1930, as modified by T. D. 47785, as cooking and heating stoves, of the household type," and it is this latter claim, as clearly indicated in the brief of plaintiff, that is relied upon for relief. T. D. 47785 has reference to the trade agreement between the United States and Sweden, 68 Treas. Dec. 19, effective August 5, 1935.

THE STATUTES

Paragraph 372, *supra*, reads:

* * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem: * * *.

Paragraph 397, as modified, *supra*, reads as follows:

Cooking and heating stoves, of the household type, not specially provided for, and parts thereof not specially provided for, wholly or in chief value of iron, steel, or other base metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, and not having as an essential feature an electrical element or device, 25% ad val.

At the trial, Herbert J. Nelson, vice president and treasurer of the Quaker Manufacturing Co., for whose account the articles above described were imported, was the only witness called to testify in the

case. Through this witness, a pamphlet was received in evidence as illustrative exhibit A which, on page 16, depicts models 2010–W and 2013–W of the Burnoil heaters in controversy. It was stipulated between counsel that the articles in question are in chief value of iron, steel, or other base metal.

Mr. Nelson, who has been with the Quaker Manufacturing Co. for 21 years, testified to his familiarity with the uses of the imported oil heaters and draft controls, stating—

I arranged the shipping and destination and the handling of the whole thing from the factory in Canada to the destination in the States in each case with the assistance, of course, of others.

Although he did not actually see these particular importations which were shipped to various destinations through "our own distributors here," he was, nevertheless, familiar with them because they were similar to a great many that he had seen.

In describing the use of the imported articles, Mr. Nelson testified:

They are oil burning heating stoves. There were two sizes. The sizes are to heat more or less space. They are space heaters actually, so-called in the industry.

\* \* \* \* \* \* \*

They are a somewhat square metal painted cabinet approximately thirty to thirty-six inches high and two to three feet square or oblong, with perforations in the casing to permit cold air to come in underneath and warm air to leave near the top or the front. It is a means of circulating heated air in the room or rooms.

He stated that the illustrations on page 16 of exhibit A depicting models 2013–W and 2010–W represent the heaters in question, except for minor differences which are unimportant here.

With reference to the items described as draft controls, the witness testified:

Well, the draft control is an item that goes with every heater. It is a necessary part to the proper functioning of the heater. It is a section of smoke pipe, flue pipe with an automatic balanced valve that permits the heater to burn without any effect of outside weather conditions, wind or the like.

It appears further from the record that when the heaters are in use "Oil is permitted to come into the heater through a float valve."

\* \* \* \* \* \* \*

It operates by means of a dial similar to a water faucet. You turn it to the left to permit more fuel to enter or turn it to the right to shut off, and you leave it set wherever you want.

\* \* \* \* \* \* \*

That is the automatic valve, float valve.

The float valve, the record discloses, is operated manually and permits the required amount of fuel oil to enter the burner, according to the needs or uses of the owner. When the valve is turned on—

The oil flows into a tub in the burner which is a steel pot, so-called, about ten or thirteen inches in diameter, the sides of which are perforated with a number of

holes. The oil flows in the bottom, evaporates, mixes with air, and after it is once ignited, which is easily done——

\* \* \* \* \* \* \*

With a match or lighted piece of paper. Then the process of burning and evaporation and burning is continuous and the size of the flame or the amount of heat is at the will of the user by opening or closing that valve.

Aside from the valve, there are no other moving parts; neither are there any electrical elements or devices in these articles.

When interrogated as to the places where heaters of this kind are used, the witness testified: "In small homes, principally; stores, filling stations, warehouses, the majority of them in homes, though."

With respect to the draft controls, the following testimony was given:

Q. Where is the draft control attached to the stove?—A. It is either the first section of flue pipe or there is often an elbow in between the heater and the draft control, either way.

\* \* \* \* \* \* \*

It is a section of flue pipe about ten inches long, eight or ten inches long, six inches in diameter, which has a T section involved and a balanced valve closing that off which is affected by the pull on the chimney, the draft.

The record further discloses that these heaters are equipped with burners, which were described as follows:

It is a steel cylinder, in these cases ten or thirteen inches in diameter, depending on the size of the heater—let's take the ten inch—and it is about eight or nine inches in height. The top is open and the bottom is closed up; it is a welded part, so-called.

The witness explained that the burner differs from that in an ordinary gas cooking stove in size and shape. He also stated that—

In a gas cooking stove your gas comes in and mixes with air and burns, a combustible mixture, of course, but this comes in and flows in the bottom and mixes. It is the same idea, yes, different means of doing it.

It was admitted that cooking is not done on these heaters.

It appears further from the record that the heater is equipped with an oil tank which "hangs on the back of the heater. \* \* \* Outside the heater but part of it."

With respect to the valve, it appears that—

The valve is a small chamber about six inches long by three inches wide and it contains a small quantity of fuel oil. There is a float in there. The purpose of that float is to maintain a constant uniform flow of oil into the burner. . •

\* \* \* \* \* \* \*

From the tank above it. The valve is mounted in relation to the level to be maintained in the burner. It is on an even plane.

It is also a matter of record that the oil which flows from the tank by gravity is controlled by the valve.

On cross-examination, the witness testified that he had seen hundreds of these heaters in use in homes, filling stations, and stores, and while the majority of those he had seen were in use in stores and in filling stations, he knew that their sales principally were to home owners.

The testimony of the witness Nelson has not been contradicted nor controverted in any way and it definitely establishes that the Burnoil heaters and draft controls involved in these proceedings are, in fact, heating stoves of the household type within the meaning of paragraph 397, as modified, *supra.* Moreover, we are satisfied from the record before us that the articles in controversy do not come within the provision in paragraph 372, *supra,* for machines, as that term has been interpreted and applied in *Simon, Buhler & Baumann (Inc.)* v. *United States,* 8 Ct. Cust. Appls. 273, T. D. 37537; *United States* v. *Klingerit, Inc.,* 17 C. C. P. A. (Customs) 472, T. D. 43931; and *United States* v. *J. E. Bernard & Co., Inc.,* 30 C. C. P. A. (Customs) 213, C. A. D. 235.

Upon the facts of record and for the reasons above stated, the claim of plaintiff that the imported articles should be classified as heating stoves of the household type and dutiable at 25 per centum ad valorem as provided in paragraph 397, as modified, *supra,* is sustained.

Judgment will be entered accordingly.