(C. D. 1679)

FOREIGN PRODUCTS CORPORATION *v.* UNITED STATES

United States Customs Court, Third Division

(Decided February 3, 1955)

*J. Joseph McDermott* for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Dorothy C. Bennett*, trial attorney), for the defendant.

JOHNSON, Judge: The merchandise involved herein, described on the invoice as "Actumus Humus soil builder," was imported from England on or about April 21, 1952, and was assessed with duty as an unenumerated manufactured article at 10 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, and the President's proclamation of September 18, 1951, T. D. 52827. It is claimed to be free of duty under paragraph 1685 of the said tariff act as a substance used chiefly for fertilizer.

The pertinent provisions of the tariff act are as follows:

PAR. 1558 [as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, and the President's proclamation of September 18, 1951, T. D. 52827]. Articles manufactured, in whole or in part, not specially provided for * * * 10% ad val.

PAR. 1685 [as amended by Public Law 750, 62 Stat. 583]. Guano; basic slag (ground or unground); manures; limestone, crude, crushed, or broken, when imported to be used in the manufacture of fertilizer; and (notwithstanding any other provision of this Act) those grades of substances used chiefly for fertilizers, or chiefly as an ingredient in the manufacture of fertilizers. [Free.]

At the trial, Edgar Kirby, vice president and general manager of the plaintiff corporation, testified that his company is engaged in the import and export business and has been importing "Actumus Fertility Soil Builder" from England since 1950. According to the witness, the shipments are always identical, and a sample was received in evidence as plaintiff's exhibit 1. The witness stated that his firm has the exclusive sales agency for the product and has been selling it in the United States since 1950, distributing it gradually throughout the country through dealers—seed firms—such as Henderson, Brechts of Boston, and Duryea Seed Co. The witness said that he has seen the product used many times in New Jersey, Pennsylvania, and New York State. He explained that it is applied to the soil directly in its dry form or sprayed or sprinkled, when in liquid form, and that it may be put right on the soil or into a compost heap. He stated that it is applied primarily for the purpose of improving the soil and of growing crops and that any other uses are incidental. For instance, it may have a cleansing effect when sprayed over crops and leaves, and, when applied to leaves, it will go along the stem to the root system, where it is most needed so as to increase the root growth of the plant. It is not used as an insecticide and does not kill ants or other insects, but it makes the soil crumbly so that it will break up nests of ants, causing them to leave temporarily.

Charles J. Taylor, salesman for the plaintiff corporation, testified that he has sold the instant merchandise for 2½ to 3 years in parts of New England, New York, New Jersey, and Pennsylvania to

farmers, vegetable growers, and landscape gardeners. During that time, he has seen it used many times either in dust or in liquid form. It is applied to the soil as a soil builder; "It proves the ground so it makes available for the plant to take it in." He has never seen it used for any other purpose. So far as he knows, it is a newly discovered product, and counsel conceded that it was first imported into the United States in any quantity in 1950.

The issue before us is whether this merchandise is entitled to free entry under paragraph 1685 as a substance used chiefly for fertilizer. Since classification under that provision is expressly declared to be dependent upon chief use, such use is to be determined as of the date of importation or immediately prior thereto. *Wilbur-Ellis Co.* v. *United States*, 18 C. C. P. A. (Customs) 472, T. D. 44762; *H. J. Baker & Bro.* v. *United States*, 37 C. C. P. A. (Customs) 52, C. A. D. 419. The term "fertilizer," as used in the tariff act, has been held to denote any substance that increases the productiveness of the soil rather than to be limited to the definition of fertilizer found in scientific agricultural literature, namely, materials prepared artificially which supply nutrients to plants. *Peat Import Corp.* v. *United States*, 4 Cust. Ct. 181, C. D. 319. This is in harmony with decisions giving agricultural free-list provisions a very broad and liberal construction, so that the evident purpose of Congress to favor agriculture may be carried out. *United States* v. *S. S. Perry*, 25 C. C. P. A. (Customs) 282, T. D. 49395; *Wilbur-Ellis Co.* v. *United States*, 26 C. C. P. A. (Customs) 403, C. A. D. 47.

According to the uncontradicted and unimpeached testimony of the witnesses herein, this product has been used since it was first imported in 1950 as a soil builder for growing crops and any other uses have been incidental. While the observations of these witnesses were limited to New England, New York, New Jersey, and Pennsylvania, it is to be noted that their company, the plaintiff herein, was the sole importer of the merchandise and that the product was being introduced into the United States gradually through sales to dealers. It has been held that the determination of chief use involves not only a geographical consideration but also the quantity of merchandise used and that the uncontradicted and unimpeached testimony of a single credible witness may overcome the presumption of correctness attaching to the collector's action and establish a *prima facie* case. *United States* v. *S. S. Perry, supra*; *United States* v. *Gardel Industries*, 33 C. C. P. A. (Customs) 118, C. A. D. 325.

The *Perry* case involved the classification of celluloid poultry leg bands, and the sole witness testified that he had sold the articles and seen them used in the Pacific Coast area. The court said (p. 289):

We think the above-quoted testimony from the witness Woodhull, who was unusually well qualified, overcomes the presumed finding of the collector, and that

since no evidence was introduced to the contrary and no real issue made on the point, it must be concluded that appellee on the question of chief use made a *prima facie* case. Under such circumstances, if the Government sought to controvert the issue, it was its duty to introduce testimony on the subject. See *Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, T. D. 31120.

In the instant case, the Government has failed to introduce any testimony and has submitted a statement that "in view of the uncontradicted testimony of plaintiff's witness in this case and the brief filed by counsel for the plaintiff, this office does not desire to file a brief on behalf of the United States."

On the record presented, we hold that the merchandise involved herein is a substance used chiefly for fertilizer and is entitled to free entry under paragraph 1685 of the Tariff Act of 1930, as amended, *supra*. The protest is sustained and judgment will be rendered for the plaintiff.