**No. 60710.**—Norman G. Jensen, Inc. *v.* United States, protest 215343–K (Pembina).

Ford, Judge: By the suit listed above, plaintiff challenges the classification of certain imported merchandise as manufactures of metal, not specially provided for, assessed at 22½ percent ad valorem under paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802. Plaintiff claims said merchandise to be properly dutiable at 12½ percent ad valorem under paragraph 397 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739, as heating stoves of the household type, and parts thereof. The paragraph under which claim is made provides specifically for:

Cooking and heating stoves of the household type (not including portable stoves designed to be operated by compressed air and kerosene or gasoline), and parts thereof_____12½% ad val.

The collector's classification of the subject stoves carries with it a presumption that he found them to be composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal, but not plated with

platinum, gold, or silver, or colored with gold lacquer, and that they are not wholly or in chief value of lead, tin, or tin plate. This presumption in favor of the collector's classification is not challenged by the plaintiff herein and, therefore, stands uncontradicted. The only question for decision, therefore, is whether or not the imported merchandise consists of heating stoves, and parts thereof, of the household type, it being shown that they are not portable stoves and parts thereof, designed to be operated by compressed air and kerosene or gasoline.

The plaintiff offered the testimony of two witnesses, thoroughly familiar with these types of stoves and their use. Their testimony is not contradicted and so completely establishes that the merchandise, invoiced as "#1H Booker Heater," "#2H Booker Heater," or "#55 Booker Adapter Models," are heating stoves of the household type, as claimed by the plaintiff, that a detailed discussion of the same is not deemed necessary. Suffice it to say that their testimony shows that they were completely familiar with the design of the items, set out above, and how and where they are used; that they were specially designed for use in the household, although, in certain instances, they could be and were used other than in the household; and that their chief use and almost exclusive use is in the household, seldom being used in any other place.

As to the merchandise, invoiced as "#2F Booker Furnaces" and "#55 Booker Household Furnaces," plaintiff's witness testified as follows:

X Q. Now, on page 7, can you see it from there?—A. Yes.
X Q. That is described as a furnace also, isn't it?—A. That is a furnace, yes.
X Q. And, it is sold as a furnace, isn't it?—A. Yes.
X Q. And not as a stove?—A. No; no, you would not describe that as a stove.

From the above testimony, it is quite clear that the witness did not consider the merchandise invoiced as last above set out as a stove, but a furnace. However, reference to Webster's New International Dictionary, 1949 edition, discloses the following definition of the word "stove":

*stove, n.* * * * **2.** A furnace, commonly made of cast iron, sheet iron, or sheet steel, for generating or retaining heat for warming a room, for culinary purposes, for heating tools, etc., for heating air for a hot blast, * * * or the like. Stoves may have a receptacle (often lined with fire brick, etc.) for burning solid fuel, as coal, or burners for oil or gas, or they may be heated by electricity, or, in special cases, by the hot gaseous products of combustion from a furnace. * * * **3. a** A kiln, as for firing pottery or drying minerals. **b** A drying room or box used in various manufactures.

Corpus Juris Secundum defines the word "stove" as:

A word which covers a wide variety of heat-producing apparatus employed for various uses. The distinguishing feature of a stove is to produce heat.

Words and Phrases, volume 40, page 239, epitomizes the decision in the case of *Stevens* v. *Mutual Protection Fire Ins. Co.*, 149 A. 498, 501, 84 N. H. 275, 69 A. L. R. 624, as follows:

Under provisions of fire policy to effect that policy shall be void and inoperative if certain burning fluids shall be kept or used on premises insured, except what is known as refined petroleum, kerosene, or coal oil may be used for lighting, and expressly permitting use of kerosene oil stoves, use of kerosene oil brooder held permissible appliance, since word "stove" covers variety of heat-producing apparatus employed for various uses, especially where brooder in question did not materially differ from ordinary oil stoves.

According to the common meaning of the term "stove," the same includes a furnace. This being true, the testimony above set out, to the effect that a certain item is described as a furnace, it is sold as a furnace and would not be described

as a stove, and the fact that it is described in exhibit 1 as a furnace, would not appear to be in conflict with the common meaning of the term "stove," which includes a furnace. In view of the above-quoted common meaning of the term "stove," we are inclined to the view, and so hold, that the merchandise invoiced as "#2F Booker Furnaces" and "#55 Booker Household Furnaces," even though bought and sold as furnaces, are nevertheless, entitled to classification as heating stoves of the household type and, consequently, are also entitled to pay duty at the rate of 12½ percent ad valorem under said paragraph 397, as modified, *supra*, as alleged by the plaintiff.

The following observation in the case of *Foreign Products Corporation* v. *United States*, 34 Cust. Ct. 67, C. D. 1679, is particularly apropos to the facts in the instant case:

According to the uncontradicted and unimpeached testimony of the witnesses herein, this product has been used since it was first imported in 1950 as a soil builder for growing crops and any other uses have been incidental. While the observations of these witnesses were limited to New England, New York, New Jersey, and Pennsylvania, it is to be noted that their company, the plaintiff herein, was the sole importer of the merchandise and that the product was being introduced into the United States gradually through sales to dealers. It has been held that the determination of chief use involves not only a geographical consideration but also the quantity of merchandise used and that the uncontradicted and unimpeached testimony of a single credible witness may overcome the presumption of correctness attaching to the collector's action and establish a *prima facie* case. *United States* v. *S. S. Perry, supra* [25 C. C. P. A. (Customs) 282, T. D. 49395]; *United States* v. *Gardel Industries*, 33 C. C. P. A. (Customs) 118, C. A. D. 325. (Citation in brackets ours.)

Upon the established facts in this case, and following the pronouncements in the above quotation, we hold the merchandise, hereinbefore specified, to be properly dutiable at the rate of 12½ percent ad valorem under paragraph 397 of the Tariff Act of 1930, as modified by T. D. 52739, as alleged by the plaintiff.

As to any and all other items of merchandise covered by this protest, the evidence is not sufficient to establish that the same are parts of heating stoves of the household type, and as to which all claims of the plaintiff are hereby overruled.

To the extent indicated, the specified claim in this suit is sustained; in all other respects and as to all other merchandise, all the claims are overruled. Judgment will be rendered accordingly.