BEFORE THE SECOND DIVISION, OCTOBER 29, 1959

No. 63472.—Gamble Vargish & Co., dba Seabury & Co. v. United States, protest 58/18037 (Los Angeles).

FORD, Judge: Certain items described on the invoice as "'Stesco' hikers stoves," were assessed with duty at 22½ per centum ad valorem under the provisions of paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, as articles or wares not specially provided for, wholly or in chief value of metal.

It is the contention of plaintiff that said stoves are more properly described under the same paragraph, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as cooking stoves of the household type, not operated by compressed air and kerosene or gasoline, which provides for duty at 12½ per centum ad valorem.

The pertinent provisions of the Tariff Act of 1930, as modified, are as follows:
Paragraph 397, as modified by T.D. 51802, supra:

Articles or wares not specially provided for, whether partly or wholly manufactured:

* * * * * * *

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

* * * * * * *

Other (except slide fasteners and parts thereof___ 22½% ad val.

Paragraph 397, as modified by T.D. 52739, supra:

Articles or wares not specially provided for, whether partly or wholly manufactured:

* * * * * * *

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other base metal, but not plated with platinum, gold, or silver, or colored with gold lacquer:

* * * * * * *

All the following, if not wholly or in chief value of lead, tin, or tin plate:

* * * * * * *

Cooking and heating stoves of the household type (not including portable stoves designed to be operated by compressed air and kerosene or gasoline), and parts thereof _____ 12½% ad val.

In an effort to sustain its position, plaintiff introduced the testimony of one witness and there was offered and received in evidence plaintiff's illustrative exhibit 1, a representative sample of the stoves in question.

It was also stipulated by and between counsel for the respective parties that plaintiff's illustrative exhibit 1 is wholly or in chief value of metal, other than gold, platinum, silver, lead, tin, and tin plate.

Plaintiff's illustrative exhibit 1, the representative sample of the involved merchandise, comes in a metal can, approximately 5½ inches high and 3½ inches in diameter. The stove itself is removed from the can and three legs are placed in the clips provided on the base of the stove to enable a pot to rest thereon over the flame. The base of the stove consists of a metal container used as a reservoir for gasoline in which there is a wick which does not extend into a coil pipe affixed on top of the base of the stove. There is a small hole at the bottom of the coil at which point the stove is ignited. The distance between the coils determines the intensity of the heat. While gasoline is placed in the reservoir of the involved stove, the heat is caused by the burning of gasoline fumes which are volatile enough to be drawn up by the heat of the flame. Stoves operating on kerosene fumes have a pump and utilize the compressed air to force out the fumes for the flame.

The witness testified that the involved items were first made in England for small homes which did not have electricity and are used to boil water, fry bacon and eggs, or cook other foods. The witness has always seen them used for cooking and has never seen them used for other purposes. The witness further testified that he has seen them used in camps, offices, trailers, etc.

Based upon the record and plaintiff's illustrative exhibit 1, plaintiff contends that the involved stoves fit within the description contained in paragraph 397 of the Tariff Act of 1930, *supra*, which provides for cooking and heating stoves of the household type. It is the further contention of the plaintiff that, since the involved stoves are not operated by compressed air, they are not within the exclusion contained in said paragraph.

It is the position of defendant, in its supplemental memorandum filed herein, that the involved stoves are not of the household type and that, in any event, said stoves are not within the purview of the provisions claimed by plaintiff herein, by virtue of the exclusion contained in said paragraph 397 of the Tariff Act of 1930, as modified, *supra*.

It is urged that plaintiff's illustrative exhibit 1 comes within the definition of "stove," as the term has been defined in *Norman G. Jensen, Inc.* v. *United States*, 38 Cust. Ct. 485, Abstract 60710, where certain stoves were held, based upon the evidence that their chief and almost exclusive use was in the household, to be heating stoves of the household type. In addition to this evidence, the court quoted a number of dictionary definitions of the term "stove" and held that the common meaning of the term "stove" included a furnace.

Plaintiff, in its brief, also relies upon the case of *K. Samura Shoten* v. *United States*, 2 Cust. Ct. 45, C.D. 84, to establish that small stoves may be of the household type. This decision involved certain Japanese stoves, known as "Konro" and "Mischibigi konro," utilizing charcoal as a fuel and used in the homes of Japanese residents of Hawaii, in tea houses, at family and neighborhood picnics on the beaches, and in the gardens and yards of homes. The court was of the opinion that, although the stoves involved therein were chiefly used in the yards or gardens of residences for cooking for the family, this did not change their character as stoves of the household type, particularly in view of the fact that the classification of the merchandise was under paragraph 339

of the Tariff Act of 1930, and, consequently, the presumption of correctness attaching to the collector's classification inured to the benefit of the importer therein.

There is no question that articles such as plaintiff's illustrative exhibit 1 are stoves within the common meaning of that term. It is also not questioned, in view of the *K. Samura Shoten* case, *supra*, that small stoves used in the homes, yards, or gardens of residents for cooking for the family may be cooking stoves of the household type. However, we believe the decision in the case of *K. Samura Shoten*, *supra*, is based primarily upon the fact that the classification therein was under paragraph 339 of the Tariff Act of 1930, and, therefore, it is presumed that the collector had all the facts before him upon classification which would establish that the stoves involved therein were "household utensils" and, consequently, said stoves would be of the household type. In the instant case, the classification is under paragraph 397, Tariff Act of 1930, as modified by T.D. 51802, *supra*; hence, there is no presumption that plaintiff's illustrative exhibit 1 is of the household type.

To hold plaintiff's illustrative exhibit 1 to be a cooking stove of the household type would, in our opinion, require one to stretch his imagination. An examination of plaintiff's illustrative exhibit 1 in itself negates such a finding. Certainly, a portable stove which is capable of being contained in a metal container 5½ inches high and 3½ inches in diameter is not within the common understanding of a stove of the household type. It has ofttimes been held that a sample is a potent witness. *United States* v. *The Halle Bros. Co.*, 20 C.C.P.A. (Customs) 219, T.D. 45995; *United States* v. *Fred. Gretsch Mfg. Co., Inc.*, 28 C.C.P.A. (Customs) 26, C.A.D. 120.

It has not, in our opinion, been satisfactorily established that the involved stoves are of the household type.

In view of our conclusion that the involved stoves are not of the household type, we deem it unnecessary to consider whether the exclusion in paragraph 397 of the Tariff Act of 1930, as modified by T.D. 52739, *supra*, is applicable to the merchandise herein.

Based upon the foregoing, we hold that the involved stoves are properly dutiable at 22½ per centum ad valorem under paragraph 397 of the Tariff Act of 1930, as modified by T.D. 51802, *supra*, as classified by the collector. All claims of the plaintiff are, therefore, overruled. Judgment will be rendered accordingly.