No. 63484.—Sunbeam Motor Products and National Carloading Corp. *v.* United States, protests 58/16058, etc. (Los Angeles).

RAO, Judge: The collector of customs at the port of Los Angeles classified certain imported lighting units as articles, wholly or in chief value of base metal, not specially provided for, within the provisions of paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and, accordingly, assessed duty thereon at the rate of 22½ per centum ad valorem.

Plaintiffs have protested this action, claiming, by way of amendments duly filed, that said lighting units, together with burners, mantles, and consumer plates, where imported, are dutiable at the rate of 12½ per centum ad valorem, within the provisions of said paragraph 397, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, supplemented by Presidential proclamation, 86 Treas. Dec. 265, T.D. 52763, for incandescent lamps, designed to be operated by compressed air and kerosene or gasoline. This is the sole claim relied upon, and the four protests here involved have been consolidated for purposes of trial.

The respective modifications of paragraph 397, hereinabove cited, read as follows:

T.D. 51802, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*     \*     \*     \*     \*     \*     \*

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*     \*     \*     \*     \*     \*     \*

Other (except slide fasteners and parts thereof) ___ 22½% ad val.

T.D. 52739 and T.D. 52763, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*     \*     \*     \*     \*     \*     \*

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other base metal, but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*     \*     \*     \*     \*     \*     \*

Blow torches and incandescent lamps, designed to be operated by compressed air and kerosene or gasoline_____ 12½% ad val.

Counsel for the Government does not dispute the fact that the imported lighting units are incandescent lamps, and it has been further conceded that they are composed wholly or in chief value of metal, other than gold, lead, platinum, silver, tin, or tin plate. What is, therefore, in issue in this case is

whether or not these lamps are designed to be operated by compressed air and kerosene or gasoline.

A sample of the imported merchandise is in evidence as plaintiffs' collective exhibit 1, and there has also been submitted, as plaintiffs' exhibit 2, a schematic drawing of the various component parts of the lamp, together with a drawing of the completed lamp.

The only witness called to testify in this case was Franklin Heywood, the owner, until his recent retirement, of plaintiff Sunbeam Motor Products. It appears from his testimony that the Veritas lamp is a type of lighting unit designed for use in mobile homes, such as trailers, but is also available for outdoor lighting of patios, pools, etc.

This witness stated that the fuels used to burn exhibit 1 are butane or propane. They are supplied from a tank, to which is attached a copper tubing connected with the shaft of the lamp. When asked concerning the presence of compressed air in the lighting process, the most the witness was inclined to say was that the butane is under pressure when it is put into the tank. He further testified that he has seen incandescent lamps which consume plain white gasoline, in conjunction with compressed air, and that the only difference between them and the lamps at bar is that the former require that air be pumped into the gasoline chamber, whereas the butane would not have to be pumped because the pressure is already there.

It seems almost obvious from the instant record that the lighting units at bar are not of the type described in paragraph 397, as modified by the Torquay protocol, *supra*, in that they were not "designed to be operated by compressed air and kerosene or gasoline." The fuel which they consume, and apparently the only fuel which will permit these lamps to light and burn, is either butane or propane, except in the case of outdoor lighting, when natural gas may be used. Butane and propane are defined in Webster's New Collegiate Dictionary, second edition, 1951, as follows:

butane, *n.* *Chem.* Either of two isomeric, inflammable, gaseous hydrocarbons, $C_4H_{10}$, of the methane series.

propane, *n.* *Chem.* A heavy gaseous hydrocarbon, $CH_3CH_2CH_3$, of the methane series, occurring naturally dissolved in crude petroleum.

The same authority defines the trade agreement terms as follows:

gasoline, *n.* A volatile, inflammable, liquid hydrocarbon mixture used as a fuel, esp. for internal-combustion engines, as a solvent for oils, fats, etc., and as a carburetant;—called also *petrol.* It is made by the refining or the cracking of petroleum, by recovery from natural gas, by hydrogenation of coal or water gas, distillation of oil shale, etc.

kerosene, *n.* A thin mineral oil used for burning in lamps, and also in oil stoves, etc. It is produced by distillation, chiefly from petroleum but also from oil shale.

Clearly neither butane nor propane, which are gases, are the same as either kerosene or gasoline, which are liquids. If this distinction were not enough to exclude the instant lamps from the tariff description, it is also clear that compressed air, *per se*, does not function in their operation, nor may any such conclusion be drawn from the fact that butane in a tank is under pressure.

Despite the very explicit language of the trade agreement provision for incandescent lamps of the particular variety which are designed to be operated by compressed air and kerosene or gasoline, counsel for plaintiffs urges upon the court that the trade agreement negotiators merely intended thereby to distinguish between incandescent lamps which are activated by electricity, and incan-

descent lamps which illuminate "when a mantle is heated to incandescence by the combustion of a mixture of air and gas or vapor."

This interpretation certainly is not warranted by the language used in the provision, and no extraneous data to support such a construction has been called to the attention of the court. Our own research into the matter brings to light only that similar language, proposed by the United States Tariff Commission in the 1948 Summaries of Tariff Information, volume 3, part 5, in response to a resolution of the House Ways and Means Committee to "rewrite or otherwise bring up to date * * * the commodity summaries of Tariff Information," occasioned the following comment (page 220) :

This summary covers (1) portable kerosene or gasoline cooking and heating stoves designed to be operated by compressed air, and parts thereof; (2) cooking and heating stoves of the household type, except those having as an essential feature an electrical element or device (for discussion of the latter see summary on electric ranges and parts, par. 353), and parts thereof; (3) blow torches and incandescent lamps operated by kerosene or gasoline and compressed air (for electric incandescent filament lamps, see separate summaries, par. 229) ; (4) typewriter spools; and (5) metal parts of carbonated-water siphons. Portable stoves operated by compressed air are used generally in trailers, boats, and camps, and for other purposes where larger stoves are not convenient. The household stoves covered by this summary are those which burn coal, coke, wood, kerosene, gasoline, or gas. Blow torches operated by compressed air are the types used by plumbers and mechanics. Typewriter spools are holders for inked typewriter ribbons. Parts of water siphons include heads, covers, cartridge holders, and other parts.

The accompanying table providing the foreign value and principal sources of the items covered by this provision for the period 1939–1946, lists, among the kinds of articles :

Brass blow torches and incandescent lamps operated by compressed air (kerosene or gasoline fuel).

The foregoing information was available to the negotiators of the Torquay protocol when its provisions were adopted, and it seems reasonable to assume that had all incandescent lamps of the nonelectrical variety had been intended to be embraced by the revision of paragraph 397, language of a considerably less specific nature would have been chosen.

Since the record in the instant case establishes that the lighting units at bar are not designed to be operated by compressed air and kerosene or gasoline, the claim of plaintiffs for classification and assessment of duty within said provision must fail. This being the only claim relied upon herein, all causes of action stated in the protests, or in any amendments thereto, are overruled.

Judgment will be entered accordingly.