(C. D. 2301)

ANDERSON HEATING, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 11, 1961)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff. *William H. Orrick, Jr.,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: This case raises the question of the proper rate of duty to be applied to an importation of portable heaters. These articles were classified by the collector of customs at the port of entry as household utensils, within the purview of paragraph 339 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and, accordingly, were assessed with duty at the rate of 17 per centum ad valorem.

Certain other articles, claimed to be parts of the involved heaters, were assessed with duty at the rate of 19 per centum ad valorem, pursuant to the provisions of paragraph 397 of said act, as modified by said sixth protocol, as articles of metal, not specially provided for.

It is the contention of plaintiff, as alleged in its protest, that said heaters are described by the provisions of said paragraph 397, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, for cooking and heating stoves of the household type and that, therefore, the proper rate of duty to be assessed is 12½ per centum ad valorem.

It is further claimed that said parts, identified as wick cleaners and flame spreaders, are likewise dutiable at the rate of 12½ per centum ad valorem, by virtue of said paragraph 397, as modified by the Torquay protocol, *supra.*

The language of the competing provisions, insofar as here pertinent, reads as follows:

Paragraph 339, as modified by T.D. 54108, *supra*:

Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for, whether or not containing electrical heating elements as constituent parts:

  \*      \*      \*      \*      \*      \*      \*

    Not plated with platinum, gold, or silver, and not specially provided for, composed wholly or in chief value of—

  \*      \*      \*      \*      \*      \*      \*

        Other base metal:

  \*      \*      \*      \*      \*      \*      \*

        Other_____ 17% ad val.

Paragraph 397, as modified by T.D. 54108, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

  \*      \*      \*      \*      \*      \*      \*

    Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

  \*      \*      \*      \*      \*      \*      \*

        Not wholly or in chief value of tin or tin plate:

  \*      \*      \*      \*      \*      \*      \*

            Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum (except the following: \* \* \* cooking and heating stoves of the household type, and parts thereof, other than portable cooking and heating stoves designed to be operated by compressed air and kerosene or gasoline, and parts thereof; \* \* \*_____ 19% ad val.

Paragraph 397, as modified by T.D. 52739, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

  \*      \*      \*      \*      \*      \*      \*

    Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other base metal, but not plated with platinum, gold, or silver, or colored with gold lacquer:

  \*      \*      \*      \*      \*      \*      \*

        All the following, if not wholly or in chief value of lead, tin, or tin plate:

  \*      \*      \*      \*      \*      \*      \*

Cooking and heating stoves of the household type (not including portable stoves designed to be operated by compressed air and kerosene or gasoline), and parts thereof_____ 12½% ad val.

The record contains samples of the merchandise in issue, both physical and photographic; the testimony of two witnesses for the plaintiff; and a letter sent by plaintiff to the appraiser of merchandise at the port of Miami, Fla. It appears therefrom that the subject heaters are of two types, one of which radiates heat in all directions, the other being a direct ray heater. They are composed primarily of steel, with small quantities of brass and other materials; they are marketed in pastel shades to blend with the furnishings of a household; they are operated solely by kerosene, which is drawn to the surface by an ordinary wick; they are not operated by compressed air; they are specifically designed for indoor use; they are odorless and smokeless; they are portable when not in use; they are "designed to give a specific minimum and a specific maximum of heat and any measure between those minimum and maximum can be obtained by adjustment of the wick"; their heat output is specified in terms of British thermal units; and they are used either to supply heat or to supplement central heating systems.

The witnesses for the plaintiff who were, respectively, the export manager of the British manufacturer and shipper of these heaters, and the president of plaintiff corporation, the American importer and distributor thereof, both expressed the opinion that the articles at bar are parts of the furnishings of a household, as distinct from household utensils, for the reason that the latter term relates to tools and devices designed to perform a specific task to be accomplished by an individual. As stated by the former witness:

I look upon furnishings as something which is necessary for the comfort of the individual in a house as I said in the earlier part of my testimony, something to make the house livable. I look upon a utensil as a tool to carry out a specific task which is quite a different thing from the function for which this appliance is made.

In view of the comprehensive scope which the courts have accorded to the tariff provision for household utensils, the fine distinction which plaintiff seeks to draw between tools manipulated by individuals for the accomplishment of a desired objective and instruments or devices which function as "household furnishings," without human attention or intervention, lacks conviction. The term has been defined as embracing all instruments and implements chiefly used in a household for utilitarian purposes, for the care and maintenance of the home or for the comfort and convenience of its members. *United States* v. *Ellis Silver Co.*, 16 Ct. Cust. Appls. 570, T.D. 43297; *Frank P. Dow Co., Inc.* v. *United States*, 21 C.C.P.A. (Customs) 282, T.D. 46816;

*I. W. Rice & Co.* v. *United States,* 24 C.C.P.A. (Customs) 114, T.D. 48415; *Pramette Juvenile Furniture Company* v. *United States,* 36 C.C.P.A. (Customs) 61, C.A.D. 398; *United States* v. *S. P. Skinner Co., Inc.,* 46 C.C.P.A. (Customs) 105, C.A.D. 708; *Kroder Reubel Co., Inc.,* and *Alltransport, Inc.* v. *United States,* 44 Cust. Ct. 274, C.D. 2186.

In the recent case of *United States* v. *Electrolux Corporation,* 46 C.C.P.A. (Customs) 143, C.A.D. 718, our appellate court considered the provision for household utensils in paragraph 339 in relation to that for electrical articles in paragraph 353 of the Tariff Act of 1930, in connection with certain electrical floor polishers of the household variety. The phrase "household utensils" was characterized as a "very broad class indeed, aptly describing not only electrical appliances of all kinds but any useful tool, implement, instrument or vessel used in the household," and as including such devices as fans, ranges, washing machines, and refrigerators.

In the absence of the trade agreement provision for cooking and heating stoves of the household type, and without precedent or a congressional purpose to the contrary, it might be said that heaters of the class before us ought to be embraced within the provisions for household utensils. Here, however, we are confronted with an *eo nomine* designation of heating stoves of the household type, albeit one carved out of the basket clause for unenumerated articles of metal by trade agreement negotiation. Our inquiry, therefore, must be addressed to the question of how it happens that the negotiators provided for household stoves in paragraph 397, *supra,* seemingly in derogation of the scope of the language of paragraph 339. The answer lies, we believe, in the history of these respective provisions, and the data available to Congress at the time of their enactment.

"Household" utensils were first specifically provided for when the bill which became the Tariff Act of 1922 was presented to Congress for consideration. In the 1921 Summary of Tariff Information, which was prepared by the United States Tariff Commission at the request of the Senate Finance Committee, Congress was advised, without further amplification, that the word "household" was newly included in paragraph 339. At the same time, under a discussion of the catchall provision for articles of metal, not specially provided for, information was supplied to Congress that stoves and ranges were among the many articles thereby embraced.

It would appear that if it were the intention of Congress to relegate stoves and ranges to the new provision for household utensils, that intention might have been evidenced by some further change in the wording of the two provisions. The failure of Congress to take further action seemingly reflects an approval of the classification of stoves and ranges theretofore obtaining.

In any event, when Congress was considering the bill which became the Tariff Act of 1930, it was again brought out, by way of data contained in the 1929 Summary of Tariff Information, that gas and oil stoves and appliances, hot-air furnaces, and fireless cookers were classes of merchandise considered to be miscellaneous manufactures of metal. By reference to an abstract decision of the Customs Court (*Odo Shoten* v. *United States*, 51 Treas. Dec. 1204, Abstract 2792), information was provided that charcoal stoves had been held to be articles dutiable under paragraph 399 of the Tariff Act of 1922, the predecessor of the present paragraph 397. Since neither paragraph 397 nor paragraph 339 was amended to effect any different result, it may be presumed that Congress approved and ratified this practice.

Cooking and heating stoves of the household type, not specially provided for, and parts thereof, were first *eo nomine* provided for in the modification of paragraph 397 of the Tariff Act of 1930, by the trade agreement with Sweden, 68 Treas. Dec. 19, T.D. 47785. Paragraph 397 was further modified to provide for portable cooking and heating stoves, designed to be operated by compressed air and kerosene or gasoline, and parts thereof.

In the "Digests of Trade Data with Respect to Products on which Concessions were Granted by the United States," in the Swedish Trade Agreement, the following comments are to be found at pages 176 and 179, respectively:

The portable oil stove here referred to is one among many types of stoves dutiable under paragraph 397. It is equipped with a reservoir to contain the fuel (gasoline or kerosene) which is forced through a heated jet by means of compressed air. Passing through the heated jet, the oil is vaporized before ignition. Such stoves are made of iron and brass. They are used for heating and cooking in camps, on boats, and for purposes where heavier stoves are not convenient or where gas or electricity is not available.

> *       *       *       *       *       *       *

The above classification of household cooking and heating stoves include[s] coal, coke, wood, and gas stoves, portable kerosene or gasoline stoves not operated by compressed air, and all types of nonportable kerosene and gasoline stoves. Excluded from this classification are electric stoves, dutiable under paragraph 353, and portable gasoline and kerosene stoves operated by compressed air which, by the terms of the agreement with Sweden, are subject to duty under a separate classification in paragraph 397.

The designation for cooking and heating stoves of the household type in the Swedish Trade Agreement, *supra*, came under judicial observance in the case of *K. Samura Shoten* v. *United States*, 2 Cust. Ct. 45, C.D. 84, in connection with an importation of metal articles known as Konro stoves. These stoves, which were heated by charcoal, were classified as household utensils in paragraph 339 of the Tariff Act of 1930. They were claimed to be more properly provided for in paragraph 397, as modified by said Swedish Trade Agreement,

as cooking and heating stoves of the household type. Upon a record which established that Konro stoves were chiefly used for cooking in the homes of Japanese residents of Hawaii, the protest claim was sustained.

The same provision of the Swedish Trade Agreement was subsequently held to apply to an importation of so-called Burnoil heaters— that is, oil-burning heating stoves of the space-heater variety sold principally to homeowners for heating small homes—which had been classified in paragraph 372 of the Tariff Act of 1930 as machines, not specially provided for. *Davies Turner & Company* v. *United States*, 28 Cust. Ct. 294, C.D. 1425.

With this background indicative of congressional purpose and judicial construction, the language presently in issue was written into the Torquay Protocol to the General Agreement on Tariffs and Trade, *supra*.

Since then, this provision has been invoked and held to apply to household heaters not designed to be operated by compressed air and kerosene or gasoline in *Norman G. Jensen, Inc.* v. *United States*, 38 Cust. Ct. 485, Abstract 60710, and to charcoal-burning cooking stoves of the household type, known as Hibachi stoves, *D. E. Sanford Company* v. *United States*, 43 Cust. Ct. 296, Abstract 63217.

We are, therefore, of the opinion that the appropriateness of classifying household cooking and heating stoves in paragraph 397, as modified by the Torquay protocol, has been conclusively determined. When such stoves are not designed to be operated by compressed air and kerosene or gasoline, they are properly dutiable at the rate of 12½ per centum ad valorem.

Counsel for the Government here urges that the heaters at bar are excluded from paragraph 397, as modified, because they consume kerosene as fuel. Concerning this contention, little more need be said than that the exclusion applies not to kerosene or gasoline-burning stoves, but to those which are operated by a combination of compressed air and kerosene or compressed air and gasoline. See and compare, *Sunbeam Motor Products and National Carloading Corp.* v. *United States*, 43 Cust. Ct. 391, Abstract 63484.

The record in the instant case establishes, without contradiction, that compressed air is not utilized in connection with the operation of the subject heaters. They are fueled solely by kerosene. Accordingly, the claim for their classification in paragraph 397 of the Tariff Act of 1930, as modified by the Torquay protocol, *supra*, as cooking and heating stoves of the household type (not including portable stoves designed to be operated by compressed air and kerosene or gasoline), with the consequent assessment of duty at the rate of 12½ per centum ad valorem, is sustained as to the articles identified as Blue Flame

Heater, plaintiff's exhibit 1, and Little Giant Heater, plaintiff's exhibit 2.

Although parts of such stoves are also specifically provided for in the trade agreement, the instant record lacks any proof that the imported wick cleaners and flame spreaders, assessed with duty at the rate of 19 per centum ad valorem, are parts of the involved heaters within the contemplation of law. "[A] 'part' of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article*." [Italics quoted.] *United States* v. *Willoughby Camera Stores, Inc.*, 21 C.C.P.A. (Customs) 322, T.D. 46851. No explanation has been here offered as to the function of these items, identified in plaintiff's exhibit 3 as spare parts, nor whether or not they are essential elements in the operation of the subject heaters. *United States* v. *John A. Steer Co.*, 46 C.C.P.A. (Customs) 132, C.A.D. 175. The claim with respect to wick cleaners and flame spreaders is, therefore, overruled.

Judgment will be entered in accordance with the conclusions herein reached.