No. 66689.—Stor-All Corp. *v.* United States, protests 59/31913, etc. (Los Angeles).

RAO, Judge:   The five protests enumerated in the schedule of protests, hereto attached and made a part hereof, have been consolidated for purposes of trial.

They relate to certain imported metal parts for barbecue grills, which were assessed with duty at the rate of 19 per centum ad valorem, pursuant to the provision in paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, for articles of base metal, not specially provided for. It is the claim of plaintiff that said merchandise is more specifically provided for in paragraph 397 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as cooking and heating stoves of the household type, or parts thereof, which are dutiable at the rate of 12½ per centum ad valorem.

The modifications of paragraph 397 by the aforementioned trade agreements, respectively, contain the following provisions:

[T.D. 54108]:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*      \*      \*      \*      \*      \*      \*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*      \*      \*      \*      \*      \*      \*

Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum (except \* \* \*)_____ 19% ad val.

[T.D. 52739]:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*      \*      \*      \*      \*      \*      \*

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other base metal, but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*      \*      \*      \*      \*      \*      \*

All the following, if not wholly or in chief value of lead, tin, or tin plate:

\*      \*      \*      \*      \*      \*      \*

Cooking and heating stoves of the household type (not including portable stoves designed to be operated by compressed air and kerosene or gasoline), and parts thereof_____ 12½% ad val.

The imported items are identified in the record as plaintiff's exhibits 1 through 11 and consist of the following: Center guides, leg sockets, fork adapters, fork tines, push rods, legs, thumbscrews, crank handles, Tinnerman nuts, and rods or spits.

The parties have stipulated that said exhibits are, or represent, essential parts of barbecues, as illustrated by plaintiff's collective exhibit 12; that said items are not composed of, nor plated with, platinum, gold or silver, nor colored with gold lacquer, nor wholly or in chief value of lead, tin, or tin plate; that they are not portable stoves designed to be operated by compressed air and kerosene or gasoline.

It has been further agreed as follows:

1. That exhibit 7 is used in nonmotorized barbecues.

2. That exhibits 4, 5, 10, and 11 are used only in motorized barbecues.

3. That exhibits 1, 2, 3, 4 [sic], 8, and 9 are used in both motorized and nonmotorized barbecues.

4. "That the only electrical element in the motorized barbecue consists of an electric motor which turns the spit; that the spit can also be operated by

hand by merely removing the motor, which requires the unscrewing of a couple of nuts which attach the motor to the barbecue when there is a power failure, or no source of electricity to operate the spit, such as in summer cabins and remote country areas."

5. That there are no other electrical elements in either the motorized or the nonmotorized barbecues.

6. That the source of heat for cooking purposes comes from charcoal.

7. That the electrical element in the motorized barbecue functions only when the spit is operating; but that no electrical element is needed for cooking on the grill.

8. That the most usual method of using barbecues is in cooking on the grill.

The agreed facts numbered 1 through 8, *supra*, were stipulated by the parties at a rehearing ordered *sua sponte* by the court for the purpose of ascertaining whether the electrical elements shown on certain of the photographs in plaintiff's collective exhibit 12 were essential features of the finished barbecue grills, in view of the provisions of paragraph 353 of said act, as modified by said General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, for electrical cooking stoves and ranges. The order of restoration, dated July 6, 1961, Abstract 65881, made no determination as to the merits of the case nor of the validity of plaintiff's contention that the parts in issue were parts of cooking and heating stoves of the household type within the provisions of said paragraph 397, as modified by the Torquay protocol, *supra*. It is noted, however, that, in the supplemental brief filed by counsel for the plaintiff, the following statement is made:

* * * In its order this Court held that as between the assessed rate and the claimed rate, the items in question were more specifically provided for under the provision for cooking stoves of the household type.

The court frowns upon such careless, if not misleading, presentation of the issues submitted to it for determination.

Additional evidence in the case was given by plaintiff's witness Ralph Stein, who had been in the employ of Stor-All Corp. about 7½ years. At the time of trial, Mr. Stein was the administrative assistant to the sales manager of the company, but he had previously served the company as traffic manager and as purchasing agent. In these several capacities, his duties involved purchasing and importing barbecue parts, such as those in issue, and selling and shipping the complete units throughout the United States.

This witness identified the four different types of barbecues sold by plaintiff, and illustrated by various photographs, introduced in evidence as plaintiff's collective exhibit 12, as, respectively, smoker-wagon (marked A in the exhibit), round (B), small or hibachi type (C), and a so-called in-between type (D). Speaking generally about barbecue grills manufactured or assembled by plaintiff, he testified that he, himself, has one which he uses; has sold several to friends who use them; and has seen them "on my travels to the East, used outdoors." He further stated that the "smoke wagon" and grill are outdoor type barbecues, which he has seen in use on lawns, patios, in driveways, or outdoors, in the immediate vicinity of houses, never elsewhere, for barbecuing and charcoaling meat to be consumed in or about the home. He described the hibachi type as a more portable unit, very small, with legs only about 7 or 8 inches high, which was more likely to be used away from the home because of its limited capacity. Actually, he had seen it used three or four times at picnic grounds, once on a beach, and two or three times in the vicinity of someone's home. He had not seen the in-between type in use, but assumed that it would have the same uses as the rectangular (smoker-wagon) or round barbecue.

Predicated upon this record, which can only be characterized as a very meager one, counsel for plaintiff contends that the imported items are parts of cooking stoves of the household type. It is argued that "not only can the Court take judicial notice of the fact that the barbecues, of which the items in question are stipulated to be parts, are cooking stoves which are chiefly used to cook meat by the use of charcoal in the immediate vicinity of homes for consumption either out-of-doors or inside the home, but that the unrebutted evidence in the record herein clearly establishes these facts." Upon authority of the cases of *K. Samura Shoten* v. *United States*, 2 Cust. Ct. 45, C.D. 84, and *D. E. Sanford Company* v. *United States*, 43 Cust. Ct. 296, Abstract 63217, it is also argued that an entirely outdoor use in the immediate vicinity of a home is a household use within the contemplation of the provision for cooking and heating stoves of the household type.

No useful purpose would be here served in discussing the merits of the proposition that the court may judicially notice the chief use of an article, such as a barbecue grill, see *L. Tobert Co., Inc., et al.* v. *United States*, 41 C.C.P.A. (Customs) 161, C.A.D. 544; or the sufficiency of the evidence in this case to establish chief use, since counsel for defendant concedes that the only issue presented for determination is whether a stove which is never used indoors can be considered to be a stove of the household type. It is argued that the *K. Samura Shoten* and *Sanford* cases, *supra*, are distinguishable, in that the stoves there involved were shown to have an indoor as well as an outdoor use.

The distinction sought to be drawn by defendant does not rest on a firm foundation. It will be observed that the court, in the case of *K. Samura Shoten*, *supra*, specifically held as follows:

\* \* \* The fact that because they [Konro stoves] burn charcoal they are chiefly used out-of-doors in the yards or gardens of residences for cooking for the family use does not change their character as stoves of the household type.

If the fact of chief use out of doors did not militate against classification as stoves of the household type, it logically follows that total use out of doors would require the same disposition. This is so for the reason that wherever the classification of imported merchandise is subject to determination of use, it is chief use which controls. *United States* v. *C. J. Tower & Sons*, 26 C.C.P.A. (Customs) 1, T.D. 49534. Incidental or fugitive uses are irrelevant to the consideration of use. "The rule that exceptional or incidental use does not control classification is one of long standing." *United States* v. *Yick Shew Tong Co.*, 25 C.C.P.A. (Customs) 255, T.D. 49392, and cases cited therein. Therefore, whether or not the instant stoves are ever used inside the home, their status as household stoves is established by their chief use in the grounds of the home.

It appears, however, from the proof introduced by the plaintiff, that one type of barbecue grill manufactured by plaintiff from the imported parts is not ordinarily used in the vicinity of the house. This is the small portable unit, identified as exhibit 12–C. According to the testimony, its cooking capacity is limited, and because it is "that portable," it is frequently carried away from the home to picnic grounds and beaches. The record does not show whether the use in the environs of the home predominates over the use away from the home, but it is reasonably inferable from its size and capacity that the household use would not be substantial. Accordingly, it cannot be considered to be a cooking stove of the household type. Therefore, any imported parts which are dedicated for exclusive use in the assembly of those units are not parts of cooking stoves of the household type.

From the instant record, and the stipulation of the parties, it would appear that plaintiff's exhibit 7, described as number 135 leg, is such an item. As to it, the claim in the protest is overruled. As to all other parts covered by these cases, it appearing that they may be assembled in one or another of the barbecue grills conceded to be chiefly used in the vicinity of the household, the claim for classification as parts of cooking stoves of the household type, with the consequent assessment of duty at the rate of 12½ per centum ad valorem, within the provisions of paragraph 397 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, *supra*, is sustained.

Judgment will be entered accordingly.