(C.D. 2444)

LIPMAN'S *v.* UNITED STATES

United States Customs Court, Second Division

(Decided on rehearing [not published] April 16, 1964)

*Siegel, Mandell & Davidson* (*David Serko* and *Allan H. Kamnitz* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., dissenting

RAO, Judge: An importation of merchandise, invoiced as "Garden Hose Nozzles," was classified by the collector of customs at the port of entry as articles in chief value of base metal and, accordingly, was assessed with duty at the rate of 22½ per centum ad valorem, pursuant to the provisions of paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

It is the contention of plaintiff that said merchandise is dutiable at the rate of 15 per centum ad valorem, as household utensils, within the purview of paragraph 339 of said act, as so modified, supplemented by Presidential proclamation, 83 Treas. Dec. 166, T.D. 51909.

The text of the tariff provisions here involved reads as follows:
Paragraph 397, as modified, *supra:*

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*     \*     \*     \*     \*     \*     \*

    Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*     \*     \*     \*     \*     \*     \*

    Other \* \* \*_____ 22½% ad val.

Paragraph 339, as modified, *supra:*

Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for \*. \* \*:

\*     \*     \*     \*     \*     \*     \*

    Not plated with platinum, gold, or silver, and not specially provided for:

\*     \*     \*     \*     \*     \*     \*

    Other:
        Composed wholly or in chief value of brass_____ 15% ad val.

A sample of the importation was introduced into evidence at the trial of this action as plaintiff's exhibit 1. It is the commonly recognized hose nozzle, which counsel for the respective parties stipulated was in chief value of brass, not plated with platinum, gold, or silver, or colored with gold lacquer.

The only witness in the case was Mr. Michael Blumberg, who testified in behalf of plaintiff in substance as follows:

He has been employed by a number of sales subsidiaries of the plaintiff for the past 16 years. At first, for a period of about 3 years, he was employed in the metropolitan sales office, where he was in charge of sales in the northeast region of the country. For the following 9 years, he served as sales manager, and, about 3½ years before the trial, he was appointed vice president in charge of sales. In the latter two capacities, he has been in charge of national sales and is also responsible for the hiring, training, and direction of some 35 sales representatives throughout the country.

This witness spends a good deal of time traveling throughout the United States, and, at one time or another, has visited every state in the country in connection with his work.

During the course of his association with the importer, Mr. Blumberg has become familiar with merchandise, such as plaintiff's exhibit 1. He has personally sold the item throughout the country, has used it himself, and has seen it used in places "as far ranged as New York to California, and some spots in between." In use, the nozzle is affixed to a hose for the purpose of regulating and directing the spray of

water. It is easily attached, by hand, and is usually removed when not in use. The witness has seen nozzles and hoses used to wash basements, garages, thresholds, walks, windows, exteriors of houses, and stoops, and to water flower beds and shrubbery. Primarily, these would be areas in and about privately owned homes which possess their own outlets for watering, and this is the chief application for these items.

When asked, on cross-examination, whether a nozzle and hose could be used to wash out a machine shop, or a public garage, the witness stated:

Yes. It could be used to wash anything. I'm just discussing the prime usage. Anybody with some ingenuity could find another use for it. Obviously it's to deposit water. However, the chief usage for this product are the ones that I have described.

He further stated that although hose nozzles are separate items of merchandise, individually marketed, they have no function otherwise than in conjunction with hoses, and, a source of water, and, in this respect, they are similar to water mixers and aerators.

Basically, it is the contention of the plaintiff that the subject articles fall within the provision for household utensils, for the reason that the instant record establishes, at least *prima facie*, that they are utensils which are "chiefly used in and around the house for the care and maintenance of the home and for the comfort and convenience of the members of the household."

Counsel for defendant challenges plaintiff's position on both scores, contending, in the first instance, that chief use in the household has not been established, and, moreover, that, at most, hose nozzles which are incomplete and lack practical utility until attached to hoses are only parts of household utensils, for which there is no provision in paragraph 339, as modified, *supra*.

Many precedents have been called to our attention by adversary counsel bearing upon the issues raised by their respective contentions, and we have carefully considered all of them before reaching our conclusion herein. Of particular pertinence to the present inquiry are the settled principles of the cases of *Frank P. Dow Co., Inc.* v. *United States*, 21 CCPA 282, T.D. 46816, and *I. W. Rice & Co.* v. *United States*, 24 CCPA 114, T.D. 48415, as well as the relatively recent expressions of this and our appellate tribunal in the cases of *Davies, Turner & Company* v. *United States*, 47 CCPA 129, C.A.D. 744; *Globe Importing Company* v. *United States*, 47 Cust. Ct. 248, Abstract 65882; and *Stor-All Corp.* v. *United States*, 48 Cust. Ct. 412, Abstract 66689.

The *Dow* case, *supra*, which was concerned with certain electric vacuum cleaners and floor polishers, classified as household utensils, within the provisions of paragraph 339 of the Tariff Act of 1922, is

an authority frequently cited for its determination of the common meaning of the word "utensil" derived in part from the following dictionary definitions therein quoted:

*utensil, n.* An instrument or vessel, esp. one used in a kitchen or dairy. (Webster's New International Dictionary.)

*utensil, n.* Something that is used; a thing serving a useful purpose; formerly a thing of varied use; as, *utensils* of war or observation; now, more especially, an implement or vessel for domestic or farming use; as kitchen *utensils.* (Funk & Wagnalls' New Standard Dictionary.)

*utensil, n.* An instrument or implement: as, *utensils* of war; now, more especially, an instrument or vessel in common use in a kitchen, dairy, or the like, as distinguished from agricultural *implements* and mechanical *tools.* (Century Dictionary & Cyclopedia.)

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

*instrument, n. 2.* A material thing or mechanical device for performing work or producing an effect; tool; utensil; implement; as, a mechanic's *instruments;* astronomical *instruments.* (Webster's New International Dictionary.)

*implement, n. 1.* That which fulfills or supplies a want or use; esp., an instrument, tool, or utensil used by man to accomplish a given work; as, the *implements* of trade, of husbandry, or of war. (Webster's New International Dictionary.)

*instrument, n. 1.* A means by which work is done; an implement or tool, especially an implement or mechanism for scientific or professional purposes, as distinguished from a device, tool, or machine for industrial use; figuratively, any means of accomplishment; as, the hands are *instruments* of the will.

*implement, n. 1.* An instrument used in work, especially manual work; a tool or a utensil; as, the *implements* of husbandry; the *implements* of warfare. (Funk & Wagnalls' New Standard Dictionary.)

Commenting upon the foregoing definitions, the court stated:

It wil be observed from the foregoing definitions that the terms "utensil," "instrument," and "implement" may be, and frequently are, used interchangeably.

*I. W. Rice & Co.* v. *United States, supra,* wherein was involved the question of whether powder atomizers were household utensils, within the purview of paragraph 339 of the Tariff Act of 1930, is notable for its interpretation of the word "household" as embracing all members of a family and of the term "household utensils" as including "not only utensils which are used in the maintenance and care of the home, but also those, not more specifically provided for, which are chiefly used in the household by the members thereof collectively for their convenience and comfort."

Our appellate court, in the *Davies, Turner* case, *supra,* adverted to both of the foregoing citations to support its conclusion that certain water mixers—articles used to connect hot or cold water faucets in sinks which do not have a single outlet for regulating the flow and temperature of water—were household utensils, within the purview of said paragraph 339, as modified.

In *Globe Importing Company*, *supra*, this court followed the rationale of the *Davies*, *Turner* case in holding to be household utensils certain brass aerators which, when attached to sink spouts, serve the purpose of straining out impurities, preventing splashing, and aerating water.

From the very nature of these articles, it was apparent that they were useless until they were attached to sink outlets, a process easily accomplished by manual effort, yet this does not seem to have militated against a finding that they were utensils, which, since chiefly used in the household, were properly classifiable as household utensils.

So, the fact that the nozzles here in issue have no useful function alone, but must be attached to hoses to fulfill the purpose for which they were manufactured, namely, to regulate the spray of water coming through a hose, does not detract from their character as utensils. And we are of opinion that there is no sufficient area of distinction between hose nozzles, on the one hand, and water mixers and aerators, on the other, to sanction the contention that the former are at most only parts of household utensils which are not provided for in said paragraph 339. To the extent that water mixers and aerators fall within the common meaning of the word utensils, as determined in the *Dow* case, so too do the involved hose nozzles.

If, then, they are the kind of utensils which are chiefly used in the household for the care and maintenance of its members, they are properly to be regarded as household utensils.

Evidence as to the method, manner, and place of use of these hose nozzles was given by a witness who had about 12½ years' experience in the sale of this commodity on a nationwide basis; who had himself used the product; and had seen it used in various sections of the country. His testimony serves to show that these articles are predominantly used in and about the area of private homes for the watering purposes normally attendant upon their maintenance.

As was observed in the case of *United States* v. *The Baltimore & Ohio R. R. Co. a/c United China & Glass Company*, 47 CCPA 1, C.A.D. 719:

> The witnesses for appellee, importers and merchants who dealt with the variety of ornately decorated, multi-patterned cups and saucers here in issue, testified that those who purchased from them did so chiefly for decorative purposes. Since such witnesses have every incentive to know the particular uses to which their wares are appropriated, we are of the opinion that their testimony as to chief use has great probative value. *Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, T.D. 31120; *Kubie & Co.* v. *United States*, 12 Ct. Cust. Appls. 468, T.D. 40668.

It is our opinion that the witness was qualified to testify about the way in which the subject merchandise is used, and that his testimony, which was not controverted, tends to establish, at least *prima facie*,

its chief use in the manner and for the purposes which he described. Whether such uses are "household" uses within the intendment of paragraph 339, as modified, *supra*, is the final question which must be resolved.

Counsel for defendant urges, on authority of *Pramette Juvenille Furniture Company* v. *United States*, 36 CCPA 61, C.A.D. 398, that the scope of the word "household" is limited to the confines of the home, and may not be expanded to embrace areas adjacent to it, such as walks, garages, and lawns, where the instant nozzles are most apt to be used.

In the primary and literal sense, a house is a home, "a structure for human habitation" (Webster's New Collegiate Dictionary, 1961 edition), and the household consists of the home, and of the family which occupies it. Obviously, therefore, a stroller, which is shown to be chiefly used away from the home for the transportation of a child through the streets and at beaches, is too far removed from the home to be considered a household utensil, which is the tenor of the *Pramette* decision. But, in view of the facts in that case, we doubt that the court's statement to the effect that the term "household utensils" refers to articles "chiefly used *in* the household" [italics supplied] was intended as an absolute restriction of the word "household" in the paragraph under consideration to the interior portions of a dwelling.

That the word in question is susceptible of a somewhat broader interpretation was our view in the case of *Stor-All Corp.* v. *United States*, 48 Cust. Ct. 412, Abstract 66689, where barbecue grills, or parts thereof, shown to be used outside of, but in the vicinity of the home, on lawns, patios, driveways, and the like, were held to be cooking stoves of the "household" type, within the purview of the provision therefor in paragraph 397 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739. In so holding, we quoted, with approval, the following excerpt from the case of *K. Samura Shoten* v. *United States*, 2 Cust. Ct. 45, C.D. 84:

* * * The fact that because they [Konro stoves] burn charcoal they are chiefly used out-of-doors in the yards or gardens of residences for cooking for the family use does not change their character as stoves of the household type.

We are not persuaded that the word "household" has any different connotation when used as a description of a type of stove than when used to characterize a type of utensil. Indeed, in the case of *Anderson Heating, Inc.* v. *United States*, 47 Cust. Ct. 189, C.D. 2301, in considering the dutiable status of certain portable heaters, classified as household utensils, but claimed to be heating stoves of the household type, we had occasion to discuss the reason for a separate provision for household-type stoves, in the following comment:

In the absence of the trade agreement provision for cooking and heating stoves of the household type, and without precedent or a congressional purpose to the

contrary, it might be said that heaters of the class before us ought to be embraced within the provisions for household utensils. Here, however, we are confronted with an *eo nomine* designation of heating stoves of the household type, albeit one carved out of the basket clause for unenumerated articles of metal by trade agreement negotiation. Our inquiry, therefore, must be addressed to the question of how it happens that the negotiators provided for household stoves in paragraph 397, *supra*, seemingly in derogation of the scope of the language of paragraph 339. The answer lies, we believe, in the history of these respective provisions, and the data available to Congress at the time of their enactment.

We think we may judicially notice that in this era of existence there is an increasing tendency on the part of suburban and rural householders to spend much leisure time out of doors, in areas immediately adjacent to the home. The incidence of patio living and outdoor dining is of such common occurrence as to fall naturally within the purview of judicial observation, from which it is reasonable to infer that implements of such living respond as readily to the characterization of household utensils as do more conventional articles whose uses are confined to the interiors of homes.

Based upon the instant record, and for the reasons heretofore expressed, we hold the subject hose nozzles to be properly classifiable as household utensils in paragraph 339, as modified, *supra*, and that they are therefore dutiable at the rate of 15 per centum ad valorem, as claimed by the plaintiff.

Judgment will be entered accordingly.

### DISSENTING OPINION

Lawrence, Judge: The writer of this opinion is in agreement with his associates to the extent that he considers the imported hose nozzles to be "utensils" in themselves (the *Frank P. Dow* and the *Davies, Turner cases, supra*) and that the testimony of plaintiff's witness Blumberg is adequate upon which the court may find the chief use of the imported articles (the *Baltimore & Ohio* case, *supra*).

I am in complete disagreement, however, with the holding of the majority that the uses to which the imported nozzles are put are household uses within the intent of paragraph 339 of the tariff act.

The testimony of plaintiff's witness, Blumberg, stands uncontradicted that a hose nozzle, when affixed to a hose, is used to clean basements, garages, thresholds, walks, windows, and exteriors of houses; as well as to water lawns, flower beds, and shrubbery.

The construction and meaning to be given to the word "household," when used in conjunction with the word "utensils" within the purview of paragraph 339, were clearly set forth by our appellate court in the *Davies, Turner* case, *supra*, where it quoted the following from the *Rice* case, *supra:*

* * * the term "household utensils" must mean utensils used by the members of the household, either for their personal convenience and comfort, or for

the care and maintenance of the household. We are of opinion, therefore, that the term "household utensils," as used in paragraph 339, *supra*, was intended to include not only utensils which are used in the maintenance and care of the home, but also those, not more specifically provided for, which are chiefly used in the household by the members thereof collectively for their convenience and comfort.

Had the Congress intended to limit the provisions in question to such articles as were designed to be and were chiefly used in the care and maintenance of the household, it would have been an easy matter for it to have made such intention clear.

The provision for "household utensils" must, in the absence of commercial designation, be construed in accordance with its common meaning.

We adhere to the views expressed in the case of *Frank P. Dow Co., Inc.* v. *United States*, *supra*, wherein we said that if the articles are utensils within the meaning of that term, as defined in the *Ellis Silver Co.* case, *supra*, and if they are chiefly used in the household, they are household utensils, and dutiable as such, *unless otherwise more specifically provided for*. [Emphasis quoted.]

It is the view of the writer that not only are the words "household utensils" used in the statute clear and free from ambiguity, but that the expression of our appellate court that if an article is a "utensil" within the meaning to be given to it and if such article is chiefly used *in* a household, it is a household utensil, is likewise clear and should not be the subject of extension.

The writer can not subscribe to the expression of the majority that there is—

* * * doubt that the court's statement [in the *Pramette Juvenille Furniture Company* case, *supra*] to the effect that the term "household utensils" refers to articles "chiefly used *in* the household" [italics supplied] was intended as an absolute restriction of the word "household" in the paragraph under consideration to the interior portions of a dwelling. [Italics quoted.]

From the uses of the imported hose nozzles, set forth through the testimony of witness Blumberg, it is clear that said uses are chiefly in outdoor areas and not "in" a household, if we apply to that word its natural accepted meaning.

In arriving at its conclusion in the present case, the majority relies heavily on the case of *Stor-All Corp.* v. *United States*, 48 Cust. Ct. 412, Abstract 66689, wherein barbecue grills and parts thereof, used outside of, but in the vicinity of homes, were held classifiable within the provision for "Cooking * * * stoves of the household type" in paragraph 397 of the Tariff Act of 1930, as modified. Reference is then made to two other decisions of the trial court (*Samura Shoten* and *Anderson Heating*, *supra*), wherein certain charcoal burning stoves and certain portable heaters were held to come within the provision for "Cooking and heating stoves of the household type" in said paragraph 397, as modified, *supra*, and the statement follows—

We are not persuaded that the word "household" has any different connotation when used as a description of a type of stove than when used to characterize a type of utensil. * * *

In my opinion, there is a clear-cut distinction between the language of paragraph 339 and that of paragraph 397. Although paragraph 339 provides for "household utensils," paragraph 397 does not provide for "household cooking stoves" but for "Cooking * * * stoves of the household type." The provision for "household utensils" is what is familiarly known in customs law as a "use" provision and by its terms makes the *place* of use a determining factor. Such is not the case with regard to the provision for "Cooking * * * stoves of the household type" where place of actual use has no bearing whatsoever on the classification of such an article, the requirement being that the cooking stove be of a type suitable for family cooking, rather than restaurant, hotel, or other large-scale cooking purposes. In other words, the provision for "household utensils" describes the *place of use* of the utensils, whereas the provision for "Cooking * * * stoves of the household type" describes the *character of the stoves.*

In my opinion, to hold, as does the majority, that hose nozzles used "in and about the area of private homes for the watering purposes normally attendant upon their maintenance" are classifiable as household utensils in paragraph 339 is opening wide the door to endless litigation and the always-elusive problem of where to draw the line. If nozzles for garden hose are household utensils, what would be the tariff status of lawn sprinklers, wheelbarrows, lawnmowers, snowthrowers, and numerous other articles used by householders "in and about the area of private homes for * * * purposes normally attendant upon their maintenance."

In line with such a situation is the reasoning of our appellate court in the case of *United States* v. *The A. W. Fenton Company, Inc.*, 49 CCPA 45, C.A.D. 794, wherein Chief Judge Worley, in writing the unanimous opinion of the court, holding the article there in issue to be more than a motor, stated—

* * * Since it is more than a motor, it is not properly classifiable as a motor for tariff purposes. It seems to us that to hold otherwise would be to expand by degree the term "motor" to a point beyond the accepted definition of that term. It would be difficult to find a stopping point.

In the case before the court, I believe that to hold the instant hose nozzles to be household utensils in paragraph 339, as does the majority, is to "expand by degree the term ['household utensils'] to a point beyond the accepted definition of that term. It would be difficult to find a stopping point."

Adhering, as I believe we should, to the line of cases, several of which have been cited, *supra*, which have judicially construed the

meaning of household utensils in paragraph 339 of the Tariff Act of
1930, as applying to utensils chiefly used in the household either for
the comfort and convenience of the members thereof or in the care
and maintenance of the household, the writer is of the opinion that
the hose nozzles in issue, which are chiefly used in outdoor areas and
not used in a household, can not be classified as household utensils in
said paragraph 339 of the Tariff Act of 1930, as modified, as claimed
by the importer.  I would overrule the claim in the protest.