(C. D. 2746)

W. J. BYRNES & Co.
FRED ROBERTS Co. } *v.* UNITED STATES

United States Customs Court, Second Division

(Decided August 8, 1966)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*John W. Douglas,* Assistant Attorney General (*Glenn E. Harris* and *Avram Weisberger,* trial attorneys), for the defendant.

Before RAO, FORD, and NICHOLS, Judges; FORD, J., concurring

NICHOLS, Judge: The merchandise involved in this protest, imported from Japan in 1963, consists of three small metal articles resembling miniature fencing foils with hilts and handles, but stated to be skewers for broiling meat. Lengths including handles are approximately 7½, 9, and 13 inches. They were classed under paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, which reads in pertinent part as follows:

Articles or wages not specially provided for, whether partly or wholly manufactured:

 \* \* \* \* \* \* \*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

 \* \* \* \* \* \* \*

Not wholly or in chief value of tin or tin plate:

\* \* \* \* \* \* \*

Other, composed wholly or in chief
value of iron, steel, brass, bronze,
zinc or aluminum (except \* \* \*)
_____ \* \* \* 19% ad val.

They are claimed dutiable under paragraph 339 of said tariff act, as modified by T.D. 54108, which reads in pertinent part as follows:

Table, household, kitchen, and hospital utensils, and hollow or flat
ware, not specially provided for, whether or not containing electrical
heating elements as constituent parts:

\* \* \* \* \* \* \*

Not plated with platinum, gold, or silver, and not specially
provided for, composed wholly or in chief value of—

\* \* \* \* \* \*

Other base metal:

\* \* \* \* \* \* \*

Other _____ \* \* \* 17% ad val.

Plaintiffs say the articles are "household utensils." Stipulations of counsel limit the issues to whether they are chiefly used in the "household." The "household" for purposes of paragraph 339, has been held to include not only the interior of the dwelling house, but also the patios, terraces, and lawns immediately adjacent to it. *United States v. Lipman's*, 52 CCPA 59, C.A.D. 859 (May 6, 1965).

Plaintiffs called two witnesses, both in the employ of the Fred Roberts Co., the importer. They showed that the articles are imported from Japan and are sold by the Roberts company, which has a nationwide sales organization. Only the second witness, Leighton Straus, testified as to uses. However, his selling experience was all to retailers in and around San Francisco. The skewers are used, he testified, in connection with hibachis, such as are used to grill sausages at cocktail parties. Larger skewers are used to make shishkebab. He has also seen them used in "regular stove ovens." In the larger retail outlets, the items are sold in the "barbecue sections," and in the smaller ones in their "housewares division."

There is no particular reason to think that uses are uniform nationwide with respect to hibachi cookery. The hibachi requires solid fuel, generally charcoal briquettes, so it is dangerous to use it indoors unless adequate ventilation is provided. Hence climatic variations could occasion use differences. Furthermore, there are differences between parts of this country in culinary tastes. In the circumstances, evidence as to use ought to cover more than a single city unless the article and its class or kind are used only in that city. *Providence Import*

*Co., Inc.* v. *United States*, 55 Cust. Ct. 243, C.D. 2584 (October 26, 1965). (Opinion per Rao, C.J.)

In the instant testimony, there is nothing to show distribution of these skewers was confined to San Francisco. On the other hand, the witness displayed no such knowledge of uses elsewhere as would enable his testimony to be given probative weight as to uses nation-wide. In *Royal Cathay Trading Co. et al.* v. *United States*, 56 Cust. Ct. 371, C.D. 2662, the first division pointed out that one who imported through a single port might through business communications obtain knowledge of uses nationwide. No claim to that kind of foundation was or could have been made here. In the *Lipman's* case, which the plaintiff relies on, the testimony summarized in the opinion below (*Lipman's* v. *United States*, 52 Cust. Ct. 98, 102, C.D. 2444), amply informed the court as to uses nationwide.

Furthermore, in *Lipman's*, the testimony showed that the hose nozzles there involved were "predominantly used in and about the area of private homes." Even as to San Francisco, we have no such evidence here. Hibachis and other portable grills, we know judicially, are or may be used away from homes, in or about camps, parks, beaches, boats, restaurants, night clubs, and hotels. We have no judicial knowledge that use in or around homes predominates. Compare *Stor-All Corp.* v. *United States*, 48 Cust. Ct. 412, 414, Abstract 66689, holding a small portable hibachi commonly used at beaches and at picnics not to be a "cooking stove of the household type." In *K. Samura Shoten* v. *United States*, 2 Cust. Ct. 45, C.D. 84, decided in 1939, the evidence showed that the hibachi was then used only in Hawaii and only by Japanese; the evidence satisfied the court it was chiefly used in and about the home. The record in that case was incorporated in *D.E. Sanford Company* v. *United States*, 43 Cust. Ct. 296, Abstract 63217 (decided 1959), involving a San Francisco entry. Three additional witnesses testified the articles were chiefly used in and about homes. The most recent case involving stoves of the hibachi type is *Mark Ross & Co. et al.* v. *United States*, 49 Cust. Ct. 315, Abstract 67238 (decided December 3, 1962), which held that a small stove called the Mini Bachi used in homes for the purpose of cooking small pieces of meat, sausages, meatballs, and hors d'oeuvres was classifiable as a cooking stove of the household type under paragraph 397, as modified. As the competing provision there was the one for household utensils under paragraph 339, the issue whether the stoves were chiefly used in the household was not in contention. There is nothing in any of these cases to suggest that this court ever did know judicially that all hibachis were chiefly used in and around the household. The results depended on testimony focused on the uses of specific models. These cases also could not be the basis of judicial knowledge because chief use must be determined as of the time of

importation. *United States* v. *C. S. Emery & Company*, 53 CCPA —, C.A.D. 868. The latest two involved 1959 protests, and they were concerned with an article whose place in the American scheme of things was evolving rapidly. Clearly the spread of hibachi cookery to all parts of the United States and among people of all races has made the use of an article employed in such cookery more difficult to establish, and the chief uses of different sizes and types of hibachis could still very well be different. Since we do not know the chief use of a hibachi, we are not aided in determining the chief use of a skewer by the statement that it is used with hibachis. The reference in the testimony to cocktail parties does not help, for our limited judicial acquaintance with the cocktail circuit would indicate that cocktail parties are frequently held elsewhere than in or about homes. As to cooking of shishkebab, this is a difficult dish to prepare properly in the home, and we have encountered it most often in restaurants. Neither drinking of cocktails nor cooking of shishkebab are activities so exclusively associated with households that implements used in connection therewith must *ipso facto* be considered household utensils.

Thus no testimony was offered here as to the relative predominance of use in and around homes compared to other uses. And the implication that the skewer was a sort of accessory of the hibachi, with parallel uses, was not supported by any positive statement. The articles themselves offer nothing to show they are used with the hibachi alone. They could, one would think, be used with other portable grills and with open fires. Plaintiffs' witness said they were used with "regular stove ovens."

The collector must have found the articles were not chiefly used in and around households and, as this presumptively correct finding has not been effectively refuted, it must stand.

The protest is overruled and judgment will be rendered for the defendant.

CONCURRING OPINION

FORD, Judge: I concur in the result.