(C.D. 2812)

GLOY'S IMPORT CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 1, 1966)

*Siegel, Mandell & Davidson* (*Allan H. Kamnitz* and *David Serko* of counsel) for the plaintiff.

*J. William Doolittle*, Acting Assistant Attorney General (*Richard J. Kaplan* and *James S. O'Kelly*, trial attorneys), for the defendant.

Before RAO, FORD, and OLIVER, Judges

OLIVER, Judge: The merchandise involved in this protest is described on the invoice as " 'Vulcano' cooking stoves for spirit, No. 104." The stoves were assessed with duty at the rate of 19 per centum ad valorem under the provisions of paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as articles in chief value of steel, not specially provided for. Plaintiff claims the stoves are properly dutiable at only 12½ per centum ad valorem under the same paragraph of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as cooking stoves of the household type.

The relevant modifications of paragraph 397 are set forth as follows:

[T.D. 54108] Articles or wares, not specially provided for, whether partly or wholly manufactured:

\*  \*  \*  \*  \*  \*  \*

 Composed wholly or in chief value of iron, steel, \* \* \* but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*  \*  \*  \*  \*  \*  \*

  Other _____ 19% ad val.

[T.D. 52739] All the following, if not wholly or in chief value of lead, tin, or tin plate:

\*      \*      \*      \*      \*      \*      \*

    Cooking and heating stoves of the household type (not including portable stoves designed to be operated by compressed air and kerosene or gasoline), and parts thereof_____ 12½% ad val.

The parties have stipulated with respect to the following: That the imported stoves are in chief value of steel and not plated with platinum, gold, or silver, or colored with gold lacquer; that plaintiff's exhibit 1, a picture of the vulcamarine model No. 104, is illustrative of the merchandise under protest; and that said model stove is 19 by 10½ by 5 inches, weighs 7 pounds, is cream colored and enameled, possesses two burners, and has a fuel capacity of 1 quart.

The remaining evidence in the case consists of the testimony of plaintiff's sole witness, Mr. Herbert Littman, the self-employed owner of Herbert Littman, Inc., a manufacturer's representative firm primarily dealing in outdoor items. He testified that he was personally familiar with the imported stoves having sold them for approximately 5½ years throughout New England, New York, New Jersey, and Pennsylvania. The chief sources of sales are to boat dealers, camping dealers, trailer dealers, and hardware distributors. According to Mr. Littman, this merchandise operates solely with the use of denatured, nontoxic alcohol. With reference to plaintiff's exhibit 1, he testified as follows: Each stove is filled by removing a brass cover (marked "A" on exhibit 1) located to the rear; when filled, a knob (marked "B" on exhibit 1) in the front of the stove is turned slightly to allow the alcohol to run into the priming plate (marked "C" on exhibit 1) which, in turn, is connected to the burner; the knob is then turned to the "off" position and the alcohol on the priming plate is lit, heating the burner tube; the intensity of the flame produced is regulated by use of the knob "B." It was further developed that the stoves are portable although they contain provisions for being bolted down in place as when used on board a boat. They also contain sliding bar separators that are for locking pots in place when used for on-board cooking purposes.

While there was testimony concerning various uses for the stoves, such as in tent camps, in house trailers, summer homes, and fallout shelters, it was acknowledged that they are primarily designed for and chiefly used on boats.

Plaintiff has advanced two alternative contentions to sustain its claim. First, it argues that the provision for cooking stoves of the household type in the modified version of paragraph 397 covers all stoves that have the characteristics and design of stoves employed in a

household regardless of whether or not they are chiefly so used in a home. Secondly, and alternatively, plaintiff maintains that, if the place of actual chief use is a determining factor in classifying the imported merchandise, then it has made out a *prima facie* case that the stoves are chiefly used in the household since the boats in which they are used are structures for human habitation.

In support of its primary contention, plaintiff refers the court to excerpts from the "Digest of Trade Data with Respect to Products on which Concessions were Granted by the United States" in the Swedish Trade Agreement, 68 Treas. Dec. 19, T.D. 47785.[1] It was this trade agreement that first carved out the provision for cooking and heating stoves of the household type as well as the provision for portable cooking and heating stoves designed to be operated by compressed air and kerosene or gasoline. Based upon this source of legislative history,[2] plus reference to a footnote concerning "Gasoline camp stoves" set out in a table of dollar volume of imports of cooking and heating stoves in the aforementioned Digest of Trade Data, plaintiff asserts it is apparent that the treaty modification intended to cover all household-type cooking and heating stoves used for heating and cooking in camps, on boats, and generally for purposes where heavier stoves are not convenient or where gas or electricity is not available and that the only requirement is that "the cooking stove be of the type suitable for family cooking rather than some large-scale cooking purpose."

The difficulty with this is that the conclusions drawn by the plaintiff are not so apparent. The notation in the Digest of Trade Data, *supra*, to cooking stoves used in camps, on boats, and for purposes where heavier stoves are not convenient or where gas or electricity is not available refers only, as the Summaries of Tariff Information for 1948 (volume 3, part 5, page 220) point out, to portable gasoline or kerosene stoves operated by compressed air which were explicitly provided for in a separate provision from cooking stoves of the household type in the Swedish Trade Agreement, T.D. 47785. Also, the adjective "household" is used in the Digest of Trade Data, *supra*, to

---

[1] "The portable oil stove here referred to is one among many types of stoves dutiable under paragraph 397. It is equipped with a reservoir to contain the fuel (gasoline or kerosene) which is forced through a heated jet by means of compressed air. Passing through the heated jet, the oil is vaporized before ignition. Such stoves are made of iron and brass. They are used for heating and cooking in camps, on boats, and for purposes where heavier stoves are not convenient or where gas or electricity is not available.

\* \* \* \* \* \* \*

"The above classification of household cooking and heating stoves include[s] coal, coke, wood, and gas stoves, portable kerosene or gasoline stoves not operated by compressed air, and all types of nonportable kerosene and gasoline stoves. Excluded from this classification are electric stoves, dutiable under paragraph 353, and portable gasoline and kerosene stoves operated by compressed air which, by the terms of the agreement with Sweden, are subject to duty under a separate classification in paragraph 397."

[2] These same excerpts were cited by this court in *Anderson Heating, Inc.* v. *United States,* 47 Cust. Ct. 189, C.D. 2301, wherein indoor household portable heaters, fueled by kerosene but not operated by compressed air, were held to be properly dutiable as heating stoves of the household type in paragraph 397 rather than as household utensils in paragraph 339.

modify the term "cooking and heating stoves" and, thereby, tends to be in harmony with this court's observation in *Lipman's* v. *United States*, 52 Cust. Ct. 98, 103, C.D. 2444 (affirmed *United States* v. *Lipman's*, 52 CCPA 59, C.A.D. 859), that the word "household" has the same connotation when used to describe a stove in paragraph 397 or a utensil in paragraph 339. Thus, where the tariff provision has called for household utensils, as in the *Lipman's* case, *supra*, or for glass household articles, as was before this court in *M. Pressner & Co.* v. *United States*, 49 Cust. Ct. 221, Abstract 67019, the place of chief use, that is, in or immediately adjacent to the home or family dwelling, has been a determining factor in classifying the merchandise at issue.

In any event, this court, on several occasions, has consistently indicated that the situs of use, as well as the kind of use, significantly bears upon the question of classification under the modified provision for cooking and heating stoves of the household type: *K. Samura Shoten* v. *United States*, 2 Cust. Ct. 45, C.D. 84; *Davies Turner & Company* v. *United States*, 28 Cust. Ct. 294, C.D. 1425; *D. E. Sanford Company* v. *United States*, 43 Cust. Ct. 296, Abstract 63217; *Stor-All Corp* v. *United States*, 48 Cust. Ct. 412, Abstract 66689. In the *K. Samura Shoten* case, the evidence disclosed that certain charcoal burning "Konro" stoves were chiefly used in the homes and gardens or yards of Japanese residents in Hawaii for family cooking purposes and were held dutiable as cooking stoves of the household type within paragraph 397, as modified by the Swedish Trade Agreement. The same provision was held applicable in the *Davies Turner* case for oil burning space heaters which the evidence revealed were principally sold for use in heating small homes. Again, in the *D. E. Sanford Company* case, portable round iron pot-like vessels, with wooden bases and handles, fire-bowls, grates, and grills, were held to be within the provision for cooking stoves of the household type in paragraph 397, as modified in the Torquay protocol, since the evidence established that they were primarily used in and about the home for cooking such items as steaks, hotdogs, hamburgers, oriental dishes, and beans. Finally, in the *Stor-All Corp.* case, this court specifically distinguished between cooking stoves chiefly used on the grounds of homes and those used away from the home in picnic areas or at beaches. Plaintiff had claimed that imported parts for four different types of outdoor barbecue grills were properly dutiable as cooking stoves of the household type or parts thereof. As to parts used on three of the grills, the claim was sustained. However, with respect to the parts dedicated for exclusive use with a small, portable-type hibachi grill, which the evidence indicated was used in areas away from the environs of the home, the claim was denied since such stoves were not considered of the household type.

"Stoves suitable for family use" is not the language of the statute and, considering the wide variety of articles that have been placed within the scope of the provision for household cooking stoves, there appear to be no features of design or characteristics of structure that regularly earmark the "household type" of stove, as plaintiff's primary position implies. Furthermore, we find no reason, in deciding the claim in the instant case, for departing from the continuity of precedent establishing the situs of chief use as a determining factor in classifying merchandise as cooking or heating stoves of the household type.

We turn now to plaintiff's alternative contention that chief use as boat stoves constitutes chief use in a "household." Plaintiff cites the observation made by the trial court in the *Lipman's* case, *supra*, to wit: "In the primary and literal sense, a house is a home, 'a structure for human habitation' (Webster's New Collegiate Dictionary, 1961 edition)" and concludes that the boats in which the involved stoves are primarily used, which boats were described by plaintiff's witness as possessing sleeping accommodations, a sink, and "maybe a table," qualify as structures for human habitation and the stoves used on board are, therefore, household stoves.

It is readily apparent from a reading of the full decision of the trial court in the *Lipman's* case, *supra*, that the primary consideration of the majority of the court was in holding that utensils used in areas immediately adjacent to the family home were as much household utensils as those used within the home itself. It was this view that was affirmed on appeal, *United States* v. *Lipman's*, *supra*. There is no reasoning in that case which will support the conclusion that utensils used in any structure which a family may occupy, such as tents or boats, would thereby be deemed household utensils. Indeed, Webster further defines the word "habitation" as follows:

1. the act of inhabiting; state of inhabiting or dwelling or of being inhabited. 2. a dwelling place: HOUSE, HOME, RESIDENCE.

In turn, the words "house, home, residence" convey the following meanings:

House 1. a structure intended or used for human habitation: a building that serves as one's residence or domicile * * *: a building containing living quarters for one or a few families.

Home 1. the house and grounds with their appurtenances habitually occupied by a family: one's principal place of residence.

Residence 1. the act or fact of abiding or dwelling in a place for some time: an act of making one's home in a place. [Webster's Third New International Dictionary, 1961 ed.]

In each instance, the notion of habitating suggests a place or building for settled and continuous dwelling as distinguished from the family

boat the confines of which normally imply a rather ephemeral and uncomplex occupancy. In our society, at any rate, such watercraft seldom substitute as the full-fledged family place of residency. They may be referred to as "homes away from home," but judicial interpretations seek the ordinary and common, not the highly stylized meaning of words.

Based upon the foregoing considerations, we are unable to agree with plaintiff herein that stoves primarily designed for and chiefly used on boats are embraced within the modified provision in paragraph 397 for cooking stoves of the household type. The protest is, therefore, overruled and judgment will be rendered accordingly.