56 CCPA

**MAUI VARIETIES LTD., American Customs Brokerage Co., Inc., et al., Appellants,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5288.**

United States Court of Customs and Patent Appeals.

Dec. 12, 1968.

Glad & Tuttle, Los Angeles (Edward N. Glad, Los Angeles, of counsel), for appellants.

Edwin L. Weisl, Jr., Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Steven R. Sosnov, New York City, for the United States.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and BALDWIN, Judges.

RICH, Judge.

This appeal is from the judgment of the United States Customs Court, First Division, 58 Cust.Ct. 278, C.D. 2961, overruling all of several protests by several importers,[1] consolidated for trial, to the classification of a variety of lacquered plastic items imported into Honolulu, Hawaii, from Japan in 1964.

All of the imported wares were classified by the collector as "serving dishes" under Item 772.06 Tariff Schedules of the United States (TSUS) and the importers claim that they should be classified either as "Trays" under Item 772.09 or as "Other" under Item 772.15. The statutes involved are:

Tariff Schedules of the United States, Schedule 7, Part 12, Subpart C, which reads in pertinent part:

> Articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients; and household articles not specially provided for; all the foregoing of rubber or plastics:

> \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| 772.06 | Plates, cups, saucers, soup bowls, cereal bowls, sugar bowls, creamers, gravy boats, serving dishes, and platters . . . . . . . . . . . . . . . . . . . . . | 21¢ per lb. + 17% ad val. |
| 772.09 | Trays . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17% ad val. |
| 772.15 | Other . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17% ad val. |

———◆———

It was conceded by appellants at the trial that the imports are household articles of plastic and that they fall under the above headnote. It was also stipulated that they are not any of the items in 772.06 other than "serving dishes" so that the only issue under that Item is whether they are "serving dishes."

The imported merchandise is described through twelve exhibits. Exhibits 1–3 are catalog pages on which certain illustrations were identified by witnesses. Exhibits 4–12, most being collective exhibits, are samples the same as or similar to the articles involved in the protests. We shall describe the nature of the articles by the following condensed summary of the exhibits, by number:

*Exhibit*

1. A "hanki," or container for cooked rice with a cover and serving spoon. It is a straight-sided bowl a little wider than it is deep, imported in three sizes for two, three, or five persons. The full name of the item appears to be "Hanki Okegata." The three sizes appear to be 6½, 8, and 9½ inches in diameter.

2. Three different items all said to be candy bowls, two of them of

I. The importers were:
Maui Varieties Ltd.
Honolulu Sales Ltd.
Crossroads Importing Co.
Standard Trading Co. Ltd.

S. Hata Co. Ltd.
Omochaya
Yonemoto Store
KBS Trading Co.

different shape having covers, the third being an open shallow bowl without a cover.

3. In Japanese, "sushioke" or "sushi" for short, the meaning of which was thus explained: "sushi" means rice topped with raw fish or eggs and "oke" means tub. "So it would be a rice tub," the witness said. It is a flat-bottomed, round, shallow dish with a straight side-wall and no cover.

4. A rice tub with a cover, about 5" deep and 8" in diameter, the tub being notched for a spoon which is part of the item, "Akebono" design.

5. A rice tub with cover and spoon of about the same capacity as Exhibit 4 but with more rounded sides, imported in different sizes.

6. An hors d'oeuvre dish consisting of a round, flat, covered box 11" in diameter and 2" high, the cover being slightly domed, containing a molded, partitioned insert with one center and five peripheral compartments.

7. A "candy box" in the form of a sloping-sided bowl about 2½" deep and 6½" in diameter with a 1" deep, integral, almost cylindrical base and a slightly convex cover which seats in the top of the bowl.

8. An hors d'oeuvre dish mounted on a pedestal to rotate, about 10½" in diameter, with a cover and 5 separate dishes, four of arcuate shape and one squarish to fill up the space in the main dish, the cover and the main dish having a combined depth of about 2½".

9. A candy bowl without cover, standing 1½" high and about 8½" in diameter.

10. A candy bowl with a cover, standing 2½" high and about 6½" in diameter, the cover setting inside the bowl on a ledge, the rim being scalloped and the upper wall fluted.

11. A bowl, invoiced as a candy bowl, standing 2½" high and 9½" in diameter, without a cover.

12. A collective exhibit which is a set of three round boxes standing 1½" high with their covers, fitted onto a tray about an inch deep having rounded ends which snuggly holds the three boxes in a row, described on the invoice as "Plastic Candy Bowl 13½" (set of 3)," 13½" being the approximate length of the tray.

On the foregoing, a variety of finishes, colors, and surface designs are applied to the basic articles of molded plastic. Some design features are produced by molding.

Appellants contend here, as they did below, that none of the articles is a "serving dish" and that the rice containers or tubs, candy bowls and boxes are "other" articles classifiable under Item 772.06. They claim the hors d'oeuvre dishes and "sushioke" dishes are "trays" classifiable under Item 772.09. Appellants examined seven witnesses and the Government two, producing about 80 pages of printed testimony which is rather inconclusive as to the uses of the several items.

Except for the items asserted to be specifically provided for as "trays," the gist of appellants' contention is thus stated in their brief:

> The term "serving dishes" in Item 772.06, TSUS, must be defined as shallow or concave vessels *without covers* that resemble a dish in form and are used *on the table* or other *dining* surfaces to hold food *at meals*. As so defined, this term does not include any of the items at bar. [Our emphasis.]

Aside from an argument constructed from parts of dictionary definitions of the word "dish," appellants' brief is singularly lacking in any authorities for thus limiting the meaning of the term "serving dishes" as stated in the above-quoted contention.

In dealing with the several items imported, the Customs Court divided them into four groups. The first group was the rice containers or tubs or "hanki," represented by Exhibits 1, 4, and 5. It found the evidence to show that they are used as containers for cooked rice from which portions of rice are dished by the housewife or waitress into small bowls which are served to individuals. It held it to be clear that these articles are serving dishes and that the fact that these dishes may customarily be stood on the floor when a meal is served at low tables, Japanese style, or placed on a serving table rather than a dining table was "insignificant." Ordinary serving dishes, bowls, or platters, the court said, may be stood on serving tables or sideboards during meals.

In the second group the court put the "sushioke" or "sushi" dishes, Exhibit 3. It found the evidence to show they were used on the dining table during meals from which to serve sushi and that the dishes could also be used for flower arrangements and serving snacks such as potato chips. It also said that the "sushioke" do not appear to be trays but rather uncovered containers for food.

■ In the third group it put the hors d'oeuvre dishes, Exhibits 6 and 8, finding that the evidence shows they are used for serving, on various occasions other than meals, nuts, candies, cookies, fruits, olives, pickles, cakes, relishes, and the like. It found nothing in the evidence indicating these dishes could not be used as serving dishes during a meal and also found the evidence insufficient to establish that the articles are not chiefly used as serving dishes in the United States. These are items appellants insist are "trays." We have examined all the arguments and evidence and agree with the lower court that these articles are not, within common meaning, trays.

The fourth group includes the candy boxes and bowls, Exhibits 2, 7, 9, 10, 11, and 12. The lower court found from the evidence that they have been used to serve candy, cookies, potato chips, and other delicacies, as well as for miscellany including flower arangements, money, hairpins, and knickknacks. It also found the evidence insufficient to establish what the chief use of the articles was throughout the United States at the time of importation and insufficient to overcome the presumption arising from the collector's classification that they were chiefly used as serving dishes.

■ As to all of the imported items the court below appears clearly to have rejected appellants' contention that to be a "serving dish" the dish must be used on the dining table at the serving of a meal. We likewise reject that contention.

■■ We also agree with the following observations of the lower court about the inadequacy of the witnesses' testimony on chief use:

The experience of the witnesses was confined to Hawaii and California, but the merchandise was sold to tourists as well as to the local trade and so presumably is used throughout the country. Such uses may well be different. The articles themselves do not indicate that use in one part of the country would necessarily be the same as that in another. Since chief use is a question of actual fact, in the circumstances here present, evidence as to use must cover more than one or two states in order to sustain plaintiffs' claim. L. Tobert Co., Inc., American Shipping Co. v. United States, 41 CCPA 161, C.A.D. 544; Providence Import Co., Inc. v. United States, 55 Cust.Ct. 243, C.D. 2584; W. J. Byrnes & Co. et al. v. United States, 57 Cust. Ct. 148, C.D. 2746.

We agree with the Government that appellants have failed to sustain their burden of establishing that the classification of the merchandise was wrong. The judgment below is therefore affirmed.

Affirmed.

WORLEY, C. J., concurs in the result.

SMITH, J., participated in the hearing of this case but died before a decision was reached.