(C.D. 2584)

PROVIDENCE IMPORT CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 26, 1965)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Richard J. Kaplan* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: Various sizes of cocoa brush mats manufactured on metal frames were classified upon importation into the United States as articles or wares, not specially provided for, composed wholly or in chief value of steel, in paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D.

54108, and were assessed with duty at the rate of 19 per centum ad valorem.

Plaintiff herein controverts said classification and duty assessment, claiming that the imported articles should properly have been classified as household utensils, in chief value of steel, in paragraph 339 of said act, as modified by said sixth protocol, for which duty at the rate of 17 per centum ad valorem is provided.

For ready reference, we set forth herewith the statutory provisions in issue.

Paragraph 397 of the Tariff Act of 1930, as modified, *supra:*

Articles or wares not specially provided for, whether partly or wholly manufactured:

   \*      \*      \*      \*      \*      \*      \*

    Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

        Typewriter spools * * *

        Not wholly or in chief value of tin or tin plate:

            Carriages, drays, * * *

   \*      \*      \*      \*      \*      \*      \*

        Other, composed wholly or in chief value of iron, steel, * * * _____ 19% ad val.

Paragraph 339 of said act, as modified, *supra:*

Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for, whether or not containing electrical heating elements as constituent parts:

   \*      \*      \*      \*      \*      \*      \*

    Not plated with platinum, gold, or silver, and not specially provided for, composed wholly or in chief value of—

   \*      \*      \*      \*      \*      \*      \*

    Other base metal:

        Electric flatirons            * * *

        Other_____ 17% ad val.

David J. Diamond, the only witness called to testify, appeared on behalf of plaintiff herein. Diamond stated that he is associated with the Providence Import Co., Inc. (plaintiff herein), and also with Providence Floor Covering, Inc. The business of the Providence Import Co., Inc., is principally concerned with the importation of floor covering from various countries, whereas the Providence Floor Covering, Inc., company is mostly concerned with jobbing of domestic items. The witness has been selling floor coverings of all kinds, such as hooked rugs, braided rugs, doormats of different compositions, broadloom carpeting, and so forth, since 1951.

The witness testified that he was familiar with the merchandise described as cocoa brush mats on the invoices accompanying the entries

herein and, except for a minor size difference and a change in name description, said merchandise is similar to that which he has sold. He identified a cocoa brush mat 14 by 24 inches as being the same, except for size, as the items described on the invoices as 16 by 27, 14¼ by 24, and, in the case of one entry, 18 by 30. Said 14- by 24-inch doormat was received in evidence as plaintiff's exhibit 1.

Diamond testified that his duties are principally concerned with sales; that he has sold merchandise such as exhibit 1 in the area of New York City; and that he has under his control salesmen who sell in an area from Louisville, Ky., to Minneapolis, Minn., and from Kansas City, Mo., to Youngstown, Ohio. He has sold cocoa brush mats to houseware jobbers, chain variety stores, department stores, discount stores, drugstores, and to retail outlets. The witness testified to having seen articles like exhibit 1 in front of the front or back doors of private homes in Westchester, N.Y., Evanston, Ill., and St. Louis, Mo.

He had been unable to sell such mats for institutional use, such as hotels, restaurants, office buildings, or apartment house buildings for two reasons, one being the holes in the mat might catch a woman's high heels causing the wearer to trip, and, secondly, the article is not sufficiently durable for industrial use. For institutional use, he has sold doormats ranging much larger in size, 3 feet by 6 feet being a common size. He has also sold job rubber mats in roll form, which the user cuts to desired size.

Based upon his observations, Diamond stated that articles such as exhibit 1 are used in front of private dwellings or private apartment units, their function being for persons entering the house to clean their feet. While such use is predominately outside the door of a house, he has also seen them used inside said doors. He has also noticed doormats outside of individual office buildings and outside of offices in one-story taxpayer office buildings. Most of these mats were composed of rubber, but he has also seen some of india cocoa fiber, woven solid on their face and much larger in size than exhibit 1.

On the question of whether a cocoa brush mat is a "utensil" within the scope of the household utensil provision of paragraph 339 of the Tariff Act of 1930, the parties hereto referred to the case of *Frank P. Dow Co., Inc.* v. *United States*, 21 CCPA 282, T.D. 46816. In that case, the court, in the course of determining that certain electric vacuum cleaners and electric floor polishers were household utensils in paragraph 339 of the Tariff Act of 1922, stated as follows:

It having been conceded by counsel for the parties that the involved articles are machines, the first question to be determined is whether they, the question of commercial designation not having been raised, come within the common meaning of the term "utensil." We quote dictionary definitions of that term:

*Utensil, n.* An instrument or vessel, esp. one used in a kitchen or dairy. (Webster's New International Dictionary.)

*Utensil, n.* Something that is used; a thing serving a useful purpose; formerly, a thing of varied use; as, *utensils* of war or observation; now, more especially, an implement or vessel for domestic or farming use; as kitchen *utensils.* (Funk & Wagnalls' New Standard Dictionary.)

*Utensil, n.* An instrument or implement: as, *utensils* of war; now, more especially, an instrument or vessel in common use in a kitchen, dairy, or the like, as distinguished from agricultural *implements* and mechanical *tools.* (Century Dictionary & Cyclopedia.)

The terms "instrument" and "implement" are defined as follows:

*Instrument, n. 2.* A material thing or mechanical device for performing work or producing an effect; tool; utensil; implement; as, a mechanic's *instruments;* astronomical *instruments.* (Webster's New International Dictionary.)

*Implement, n. 1.* That which fulfills or supplies a want or use; esp., an instrument, tool, or utensil used by man to accomplish a given work; as, the *implements* of trade, of husbandry, or of war. (Webster's New International Dictionary.)

*Instrument, n. 1.* A means by which work is done; an implement or tool, especially an implement or mechanism for scientific or professional purposes, as distinguished from a device, tool, or machine for industrial use; figuratively, any means of accomplishment; as, the hands are *instruments* of the will.

*Implement, n. 1.* An instrument used in work, especially manual work; a tool or a utensil; as, the *implements* of husbandry; the *implements* of warfare. (Funk & Wagnalls' New Standard Dictionary.)

It will be observed from the foregoing definitions that the terms "utensil," "instrument," and "implement" may be, and frequently are, used interchangeably.

As to the meaning to be given to the word "household" as it relates to the statutory provision for "household utensils" in paragraph 339 of the tariff act, reference is made by the parties hereto to the cases of *I. W. Rice & Co.* v. *United States,* 24 CCPA 114, T.D. 48415, holding powder atomizers to be household utensils, *F. W. Woolworth Co.* v. *United States,* 26 CCPA 221, C.A.D. 20, wherein mechanical pencils attached by a chain to small metal animal figures were held to be household utensils, *Pramette Juvenille Furniture Company* v. *United States,* 36 CCPA 61, C.A.D. 398, holding children's gocarts not to be household utensils, *Davies, Turner & Company* v. *United States,* 47 CCPA 129, C.A.D. 744, which held that water mixers were encompassed by the household utensil provision, *J. C. DeJong & Co., Inc.* v. *United States,* 52 CCPA 26, C.A.D. 852, holding that pole ends used on the ends of curtain rods or poles were household utensils, and the latest case of *United States* v. *Lipman's,* 52 CCPA 59, C.A.D. 859. In said *Lipman's* case, the appellate court, in holding garden hose nozzles to be within the statutory provision for household utensils in

paragraph 339 of the Tariff Act of 1930, after making reference to most of the cases above cited, stated—

In *Davies, Turner & Co.* v. *United States*, 47 CCPA 129, C.A.D. 744, after reviewing the *I. W. Rice* and *Frank P. Dow* cases, *supra*, we said:

> Unless there is some compelling reason to do otherwise, which we do not apprehend, this case should be decided by applying the precedents which have been established by this court with reference to paragraph 339. * * *

We retain this conviction, and are convinced that the reasoning underlying the above-cited decisions is sound. However, while we are in general agreement with the government's interpretation of these cases, it would appear in light of the facts of the case at bar that the government feels they established a criterion for "household utensils" that the items be used *inside the house*, either exclusively or chiefly. We cannot agree, for we think it would be an unnecessary and artificial limitation to restrict the term "household," as it is used in paragraph 339, to the interior of a dwelling, and one not contemplated by the foregoing decisions. The term "household" is broader than the mere physical structure of a house. Indeed, as this court said in the *I. W. Rice* case, *supra*, "the term 'household' means family." There can certainly be no doubt that the subject merchandise is used chiefly within the family group.

Furthermore, we agree with the majority of the Customs Court that:

> * * * in this era of existence there is an increasing tendency on the part of suburban and rural householders to spend much leisure time out of doors, in areas immediately adjacent to the home. The incidence of patio living and outdoor dining is of such common occurrence as to fall naturally within the purview of judicial observation, from which it is reasonable to infer that implements of such living respond as readily to the characterization of household utensils as do more conventional articles whose uses are confined to the interiors of homes.

The imported garden hose nozzles have utility both inside and outside family dwellings. In addition, the *chief* uses for such goods, as established by the record evidence, are for cleaning and watering in and around such dwellings. We hold that such applications amount to use within the household, as that concept has been expounded by the decisions of this court, and that the imported articles are therefore "household utensils" within the meaning of paragraph 339. [Italics quoted.]

Granting, arguendo, without here deciding, that the imported cocoa brush mats are "utensils" within the common meaning of that term, to which the appellate court inclines to a broad interpretation (*Dow, Rice, Davies, Turner*, and *DeJong* cases, *supra*), and assuming that the record is adequate to support a finding that said articles are used in the household, in the light of the recent holding in the *Lipman's* case, *supra*, we are of the opinion that the record before us falls short of proof that the imported cocoa brush mats are chiefly so used. It is such chief use which must be proven to satisfy the requirements for classification of the imported cocoa brush mats as household utensils in paragraph 339 of the Tariff Act of 1930.

Pinpointing the evidence of use in the record before us, we have the testimony of plaintiff's witness Diamond that he sold merchandise

such as exhibit 1 "within the surroundings of New York City"; that under his control are salesmen concerned with an area "from Louisville, Ky., to Minneapolis, Minn., from Kansas City, Mo., to Youngstown, Ohio"; that he sells to houseware jobbers, chain variety stores, department stores, discount stores, drug chains, and retail outlets; and that he has seen such articles used in front of the front or back door of private homes in Westchester, N.Y., Evanston, Ill., and St. Louis, Mo.

To justify the evidence of use in the instant case, plaintiff's counsel refers to the case of *United States* v. *F. W. Woolworth Co.*, 23 CCPA 98, T.D. 47765, and quotes therefrom as follows:

> We are not unmindful of the rule that in order to establish "chief use" the evidence of use must relate to the United States generally, and not to a limited portion thereof. It may be proper to observe, however, that the question of whether "chief use" has been properly established depends upon the issues and the evidence in each case.

> We think it is a proper deduction from the evidence, and from the character of Exhibits 1, 2, and 3, that the involved articles would be used in substantially the same manner, and by substantially the same class of people, in one section of the country as in another, and that evidence establishing their chief use in a large area of the country is sufficient under the rule.

It is to be noted, however, that, in the *Woolworth* case, the court had before it "chief use in a large area of the country" whereas, in the case at bar, the only evidence of use is limited to the New York City area and some seven, eight, or nine Midwestern States.

There comes to mind the case of *L. Tobert C., Inc., American Shipping Co.* v. *United States*, 41 CCPA 161, C.A.D. 544, which, on the question of chief use, bears a close analogy to the facts at bar. The court there stated—

> While judicial notice may be taken of well known uses of an article, chief use is a question of actual fact which, in a case of this character, should be established on the basis of positive testimony representative of an adequate geographical cross section of the nation. In other words, we are reluctant to disturb the presumption of correctness attaching to the collector's classification in the absence of unequivocal proof successfully contradicting the validity of such classification.

> In the opinion below, Judge Lawrence, speaking for the court, succinctly stated:

>> In order to succeed in their contention that the articles under consideration are not illuminating articles, it was incumbent upon plaintiffs to establish by competent evidence that the articles are not chiefly used for illuminating purposes. * * * The fact of chief use is difficult to prove. It ordinarily entails rather exacting evidence of use throughout the United States and cannot depend upon evidence of use locally. It appears from the record that the testimony of plaintiffs' witnesses to which reference has been made, *supra*, covered a relatively narrow field—in and about New York, with an isolated instance in Oklahoma—which certainly falls short of the requirements of proof of chief use. [Cases cited.]

While we accept the issue of chief use of the merchandise in question as controlling in this case and agree with the able discussion of that subject by the trial court, we feel constrained to interject this comment. Candelabra and candlesticks are of quite common use. They are, as such, used in many varied ways, well known by most everyone. It is tempting, therefore, for us to apply our judicial knowledge on the subject and once and for all determine the classification of such articles for tariff purposes in the future. We recognize, however, that despite what may be the experience and knowledge of one judge or another, such may not be in line with the chief use as determined via proof, which seems to us must be available in quantity and quality sufficient to assist the court in future litigation. It is to be regretted that the record in the case before us is not in that category. We find it almost totally unacceptable for such purposes.

On the record before us, lacking as it is in "positive testimony" of chief use of the cocoa brush mats in controversy "representative of an adequate geographical cross section of the nation," we have no alternative but to overrule the claim of plaintiff for classification of the instant merchandise as household utensils within the purview of paragraph 339 of the Tariff Act of 1930, as modified.

Judgment will issue accordingly.