(C.D. 3829)

Charles H. Demarest, Inc. v. United States

United States Customs Court, Second Division

(Decided May 22, 1969)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Harold L. Grossman* and *Thomas Fernandes*, trial attorneys), for the defendant.

Before Rao and Ford, Judges, and Oliver, Senior Judge

Oliver, Judge: The merchandise involved herein consists of metal and cocoa fiber door mats. It was classified under paragraph 397 of the

Tariff Act of 1930, as modified by T.D. 54108, and assessed with duty at the rate of 19 per centum ad valorem, as manufactured articles not specially provided for, in chief value of steel.

The plaintiff claims that the merchandise is properly classifiable under paragraph 339 of the said tariff act, as modified, *supra*, dutiable at the rate of 17 per centum ad valorem, as household utensils not specially provided for, in chief value of steel.

The merchandise and the issue at bar are substantially the same as in the case of *Providence Import Co., Inc.* v. *United States*, 55 Cust. Ct. 243, C.D. 2584 (1965), which was duly incorporated into the instant case.

The pertinent provisions of the statutes involved are as follows:

Classified under paragraph 397, Tariff Act of 1930, as modified by T.D. 54108:

> Articles or wares not specially provided for, whether partly or wholly manufactured:
>
> \* \* \* \* \* \* \*
>
>> Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:
>>
>> \* \* \* \* \* \* \*
>>
>>> Not wholly or in chief value of tin or tin plate:
>>>
>>> \* \* \* \* \* \* \*
>>>
>>>> Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum \* \* \*_____ 19% ad val.

Par. 339, Tariff Act of 1930, as modified, *supra:*

> Table, household, kitchen, and hospital utensils, and hollow or flat ware, not specially provided for, whether or not containing electrical heating elements as constituent parts:
>
> \* \* \* \* \* \* \*
>
>> Not plated with platinum, gold, or silver, and not specially provided for, composed wholly or in chief value of—
>>
>> \* \* \* \* \* \* \*
>>
>>> Other base metal:
>>>
>>> \* \* \* \* \* \* \*
>>>
>>>> Other_____ 17% ad val.

The issue is whether the cocoa fiber mats at bar are "household utensils" within the meaning of paragraph 339, *supra*, or whether the mats were properly classified by virtue of their base metal frames as

manufactured articles, not specially provided for, in chief value of steel, under paragraph 397, *supra*.

The record at bar consists of the testimony of two witnesses for the plaintiff, the incorporated record in the case of *Providence Import Co., Inc.* v. *United States, supra*, and one exhibit marked plaintiff's exhibit 2 which is a door mat 14 by 24 inches in size, and is substantially the same as exhibit 1, the door mat in the incorporated case.

Harold H. Demarest, the plaintiff's first witness, testified that he was president of the plaintiff corporation for the past ten years. The corporation was engaged in the business of general importing of Far Eastern materials, raw materials and some finished products. Mr. Demarest stated that he was familiar with exhibit 2, the merchandise at bar, as well as the merchandise in the incorporated case, exhibit 1, and that the two exhibits in his opinion were identical in every material respect. Based on his testimony the record in the *Providence Import* case, *supra*, was incorporated herein without objection by the defendant.

George H. Fisher, the plaintiff's second witness, testified that he was president of Allied Mat & Matting, Inc., importers and jobbers, handling all types of mats and mattings. His experience dates back to 1922. He stated that he had been consulted quite often by the Appraiser's office as an expert on mats and that he had appeared as a witness in behalf of the Government in customs classification cases involving such merchandise. He stated that he had no interest in the instant case and was not associated in any way with the plaintiff herein or with the plaintiff in the incorporated case.

In order to carry on his business, he testified that it was necessary for him to become familiar with the products he sold. In connection with this work he traveled extensively all over the United States, and handled mats and matting not only for institutional uses, i.e., those sold to janitor supply houses, hotel and restaurant suppliers, ship chandlers, factory mill supply companies, hospitals and other institutions, but also sold to department stores and chain stores for home use. Concerning door mats like exhibits 1 and 2, his company sold such door mats to the house furnishing departments of chain stores, but never sold them to commercial or institutional users or suppliers.

The witness testified that in his travels throughout the United States he made a special effort to note the quality and uses of mats since he is in the business of selling mats and considers himself "mat conscious". He generally examined and looked at mats at every opportunity. However, he never saw such mats as exhibits 1 and 2 used as commercial or institutional mats, and that based on his experience throughout the United States such mats are not suitable for commercial or institutional use because they are entirely too small and are not sturdy enough to stand up under heavy traffic such as exits in a public building.

Lighter weight mats like exhibits 1 and 2 are not recommended for public use but would be sold only to homeowners or people in apartments. They are used in front of an individual apartment door, and in his opinion, the chief use is home use, since the mats are household mats whose function is cleaning shoes.

The witness stated that his testimony would apply to mats in sizes 16 x 27 inches, and also 18 x 30 inches, which are household sizes. His experience throughout the United States, he stated, was not limited to household mats only, but related to all types of mats and matting. He added that he had seen mats like exhibits 1 and 2 used only in a few instances in private homes or private apartments, and that he personally had not sold the mats but that such sales had been made under his supervision. His experience in mat and matting began in 1922. He began handling the particular mat like that at bar in 1958. The only way he ever saw it used was as a household mat, which was its primary use. Geographically, his travel and experience was from coast to coast and from Maine to Florida.

This case is in effect a retrial of the issue in *Providence Import Co., Inc.* v. *United States, supra,* the record of which the plaintiff has had incorporated herein. In that case the witness testified that he had sold similar cocoa mats to household jobbers, chain variety stores, department stores and various other retail outlets; that they were unsuitable for institutional use, and that he had seen such mats in front of front doors and back doors of private homes in Westchester, New York, Evanston, Illinois, and St. Louis, Missouri; and that he had sold such mats through salesmen under his control in an area from Louisville, Kentucky, to Minneapolis, Minnesota, and from Kansas City, Missouri, to Youngstown, Ohio.

After analyzing certain adjudicated cases on the terms "household" and "utensils", the trial court in the incorporated case stated at page 247:

* * * we are of the opinion that the record before us falls short of proof that the imported cocoa brush mats are chiefly so used. It is such chief use which must be proven to satisfy the requirements for classification of the imported cocoa brush mats as household utensils in paragraph 339 of the Tariff Act of 1930.

The court there held that as of record there was insufficient positive testimony of chief use of the cocoa mats throughout an adequate geographical cross section of the country, and overruled the plaintiff's claim for classification as household utensils.

The plaintiff contends that the deficiency of proof in the incorporated case is now overcome by the additional testimony adduced in the case at bar. We do not think so, and in our opinion the added testimony is little different and of no greater weight than that in the incorporated case.

The witness for the plaintiff stated that he was "mat conscious" but when pressed under questioning he stated that he had seen them used only four or five times; that in those instances the mats were in front of entrances to private homes. He said the mats were sold to chain stores, and although he did not sell them personally, the sales were made under his supervision.

Referring again to the case incorporated herein, the court there quoted at page 248 from the case of *L. Tobert Co. Inc., American Shipping Co.* v. *United States*, 41 CCPA 161, C.A.D. 544 (1953), as bearing a close analogy to the facts at bar:

While judicial notice may be taken of well known uses of an article, chief use is a question of actual fact which, in a case of this character, should be established on the basis of positive testimony representative of an adequate geographical cross section of the nation. In other words, we are reluctant to disturb the presumption of correctness attaching to the collector's classification in the absence of unequivocal proof successfully contradicting the validity of such classification.

In the opinion below, Judge Lawrence, speaking for the court, succinctly stated:

In order to succeed in their contention that the articles under consideration are not illuminating articles, it was incumbent upon plaintiffs to establish by competent evidence that the articles are not chiefly used for illuminating purposes. * * * The fact of chief use is difficult to prove. It ordinarily entails rather exacting evidence of use throughout the United States and cannot depend upon evidence of use locally. It appears from the record that the testimony of plaintiffs' witnesses to which reference has been made, *supra*, covered a relatively narrow field—in and about New York, with an isolated instance in Oklahoma—which certainly falls short of the requirements of proof of chief use.

While we accept the issue of chief use of the merchandise in question as controlling in this case and agree with the able discussion of that subject by the trial court, we feel constrained to interject this comment. Candelabra and candlesticks are of quite common use. They are, as such, used in many varied ways, well known by most everyone. It is tempting, therefore, for us to apply our judicial knowledge on the subject and once and for all determine the classification of such articles for tariff purposes in the future. We recognize, however, that despite what may be the experience and knowledge of one judge or another, such may not be in line with the chief use as determined via proof, which seems to us must be available in quantity and quality sufficient to assist the court in future ligitation. It is to be regretted that the record in the case before us is not in that category. We find it almost totally unacceptable for such purposes.

We consider the language used by the court in the *Tobert* case and in the incorporated case applicable herein and those decisions controlling. Accordingly, and based on the instant record, we find and hold that there is insufficient positive testimony of chief use of the cocoa mats throughout an adequate geographical cross section of the

United States to suport the plaintiff's claim for classification as household utensils under paragraph 339 of the Tariff Act of 1930, as modified.

We observe further that in paragraph 1022 of the Tariff Act of 1930 there was *eo nomine* provision for "* * * mats and floor coverings, wholly or in chief value of cocoa fiber * * *" under which in ordinary course the instant imports, known as cocoa fiber mats, would have found classification. However, by virtue of the fact that the mats here in issue were made on a metal frame, the metal frame became the component of chief value, with the result that the collector of customs was required to classify under paragraph 397 for articles in chief value of base metal.

The collector's classification is therefore affirmed, and the protest is overruled.

Judgment will issue accordingly.